**TOWN OF REASNOR, Iowa, Appellant,**

v.

**PYLAND CONSTRUCTION COMPANY et al., Appellees.**

**No. 2–56509.**

Supreme Court of Iowa.

May 21, 1975.

Salisbury, Omer, Fleck & Larson and Selby & Updegraff, Newton, for appellant.

Herrick, Langdon, Belin & Harris, Des Moines, for appellees Pyland Const. Co. and Maryland Cas. Co.

Brierly, McCall & Girdner, Newton, for appellees Rozendaal Const. and Merchants Mutual Bonding Co.

Heard before MOORE, C. J., and MASON, LeGRAND, REYNOLDSON, and HARRIS, JJ.

HARRIS, Justice.

This dispute stems from construction of a sanitary distribution system for the plaintiff Town of Reasnor, Iowa. The town brought this action on the claim two companies were negligent in performing construction contracts. A jury verdict in favor of defendants removed claims of specific negligence from the case. This appeal challenges the trial court's refusal to submit for the jury's consideration the town's alternative claims under the doctrine of res ipsa loquitur. We affirm the trial court.

In February of 1968 the Town of Reasnor entered into contracts with Pyland Construction Company (Pyland) to construct sewer mains and manholes. At the same time the town contracted with Rozendaal Construction Company (Rozendaal) to construct a sewage lagoon, lift station and force main connecting its construction with the rest of the sewer system.

Pyland finished its work on June 10, 1968. Rozendaal completed its part of the contract November 22, 1968. The entire system was inspected and accepted by the town and placed in operation in November 1968.

Five months later problems developed in the system. The rate of flow at the lift station began to increase until it was running continuously. Quantities of sand began to appear in the sewage lagoon. The problem was located around Manhole Number 1. Under the arrangement Pyland was responsible for building the manholes. Manhole Number 1 was the point at which Rozendaal's work was to "tie in" with the rest of the sewage system constructed by Pyland.

It appears without dispute that when Pyland was working in this particular area the water table was much higher than expected. The presence of this water required a deviation from the plans and specifications prepared by the town engineer. The manhole and sewer pipe were placed at the spot called for in the plans. The variation made by Pyland was to dig six to eight inches further down than called for and to fill the increased excavation with washed rock to the proper level. The pipe was placed on the crushed rock. The plans called for a dry excavation with a pipe bedded in a trench bottom, excavated and shaped to fit the pipe. When Pyland finished its work on June 10 all excavations were filled and covered.

Under the plans Rozendaal was to build the lift station approximately ten feet south of Manhole Number 1 and at a somewhat lower elevation. In order to "tie in" with the previously completed Pyland work at Manhole Number 1, Rozendaal necessarily had to uncover the earth to a point where contact could be made with the previous construction. When Rozendaal dug to reach the foundation of Manhole Number 1 they encountered water before reaching the bottom. Before completing the "tie in" Rozendaal was required to use pumps, metal sheeting and a well point system to dewater the area so they could work on it.

The problems which later developed resulted from the fact Manhole Number 1 had sunk approximately a foot and the sewer pipe was broken at the first joint, about five feet north of the manhole.

When the defect was discovered the town served demands upon Pyland and Rozendaal and their bonding companies to remedy the defect. Upon refusal to comply, another construction company was hired to do the work.

The remedy employed was a further, more extensive, variation from the original plans. The manhole was moved from the point ten feet from the lift station to a site 80 feet away. Cast iron pipe, rather than clay pipe, was used. Substantial quantities of rock were added to the area around the manhole.

The town brought this action to recover the amount paid the third construction company for the remedy described. The suit was tried on a theory of tort arising from violation of a contractual duty as contemplated in Giarratano v. Weitz Co., Inc., 259 Iowa 1292, 1305, 147 N.W.2d 824, 832.

It was claimed each defendant contractor performed faulty or poor workmanship in connection with the project. At trial the town offered evidence which they argued indicated such faulty or poor workmanship. The evidence and the arguments the town developed from it were quite explicit.

The case against Pyland stemmed from the claim Pyland mishandled the water problem. Pyland's foreman testified his use of crushed rock at Manhole Number 1 and for 60 to 70 feet north was proper and "the only way to do it." The town's engineer disagreed. He agreed his plan for laying the pipe could not be accomplished underwater but believed a change in specification should have been sought from him when water was encountered. He believed five or six alternatives would have then been available. He testified he was unaware any variation had been necessary or undertaken.

The case against Rozendaal stemmed from the claim a faulty seal was installed at the joint of the pipe and manhole or that the manhole was weakened or undermined when the lift station was constructed.

The town engineer testified the failure of the system stemmed from one or some combination of three causes:

(1) A failure to follow adequately engineered and prescribed methods in installing Manhole Number 1 and the tile pipe sections.

(2) A faulty seal at the joint of the pipe, or

(3) A weakening or undermining of Manhole Number 1 when the lift station was constructed.

By their verdict the jury rejected the town's claim of specific negligence. No appeal has been taken from the jury verdict. Our consideration is limited to the town's claim the theory of res ipsa loquitur should also have been submitted.

■ I. Our definition of res ipsa loquitur has been repeated many times. It is a rule of evidence not a statement of tort law. Wiles v. Myerly, 210 N.W.2d 619, 624 (Iowa 1973).

"Under this doctrine, where 1) injury is caused by an instrumentality under the exclusive control of defendant, and 2) the occurrence is such as in the ordinary course of things would not happen if reasonable care had been used, the happening of the injury permits but does not compel an inference defendant was negligent. (Authorities).

"The res ipsa theory does not raise any inference as to what did occasion the injury-causing event. If the necessary causal evidence is circumstantial, it must make plaintiffs' theory not merely possible, but more probable than any other theory based on the evidence. (Authorities).

"It is not required for application of the doctrine to prove defendant had control of the instrumentality when the injury occurred. It is enough to show control at time of the alleged negligent act, provided plaintiff proves there was no change in condition of the instrumentality, and no intervening act, which could reasonably have caused the event resulting in the injury. (Authorities)." Palleson v. Jewell Co-operative Elevator, 219 N.W.2d 8, 13 (Iowa 1974).

The parties dispute whether exclusive control by defendants was shown. The town believes it was enough to show the successive exclusive possessions by the two defendant contractors. The town argues its showing was sufficient for the jury to determine whether the claimed negligence occurred during the exclusive control of the first contractor or that of the second. Defendants urge any control by either of them was shared by the other and accordingly not exclusive.

■■ In order for the doctrine to apply control and negligence must coincide. Plaintiff is required to show control existed when the negligence must have occurred. This is not necessarily when the accident happened. Boyer v. Iowa High School Athletic Association, 260 Iowa 1061, 152 N.W.2d 293 (1967). See Loth, Res Ipsa Loquitur in Iowa, 18 Drake L.Rev. 1, 14.

A special problem is faced by a plaintiff who seeks to apply the doctrine against multiple defendants.

" * * * Unless there is vicarious liability or shared control, the logical rule usually is applied, that the plaintiff does not make out a preponderant case against either of two defendants by showing merely that he has been injured by the negligence of one or the other. * * *." Prosser on Torts, Fourth Ed., § 39, page 221.

■ This is not a case of vicarious liability. Control was shown here to be consecutive rather than shared. See Wiles v. Myerly, supra; Frost v. Des Moines Still College, 248 Iowa 294, 79 N.W.2d 306. The trial court properly found there was insufficient exclusive control by either defendant for application of the doctrine.

II. Res ipsa was inappropriate for the additional reason the town's own action was not eliminated by its showing.

"Allied to the condition of exclusive control in the defendant is that of absence of any action on the part of the plaintiff contributing to the accident. Its purpose, of course, is to eliminate the possibility that it was the plaintiff who was responsible. If the boiler of a locomotive explodes while the plaintiff engineer is operating it, the inference of his own negligence is at least as great as that of the defendant, and res ipsa loquitur will not apply until he has accounted for his own conduct. * * *." Prosser, supra, at page 224.

■ Although the res ipsa doctrine as developed in our cases is, in several respects, at variance with the Restatement we approve the following:

"It is never enough for the plaintiff to prove that he was injured by the negligence of some person unidentified. It is still necessary to make the negligence point to the defendant. On this too the plaintiff has the burden of proof by a preponderance of the evidence; and in any case where there is no doubt that it is at least equally probable that the negligence was that of a third person, the court must direct the jury that the plaintiff has not proved his case. Again, however, the plaintiff is not required to exclude all other possible conclusions beyond a reasonable doubt, and it is enough that he makes out a case from which the jury may reasonably conclude that the negligence was, more probably than not, that of the defendant." Restatement (Second) of Torts, § 328D, comment (f) at 160.

■ Plaintiff's showing does not indicate it was more probable the accident occurred by reason of either defendants' negligence than by reason of the town engineer's plans. It is at least as likely the accident resulted because the engineer improperly designed the lift station to be constructed too close to the manhole, or provided that it be installed in an improper fashion, or without regard to existing water conditions. The trial court properly refused to submit the doctrine for this reason.

III. Plaintiff separately assigns a claimed failure of the trial court to comply with rule 118, Rules of Civil Procedure. Defendants' motion to withdraw the issue of res ipsa loquitur contained six statements of why movants believed the doctrine was inapplicable. The trial court's ruling was general and did not address the statements or parts individually. Plaintiff cites the rule announced in Ruby v. Easton, 207 N.W.2d 10 (Iowa 1973), under which a failure to comply with rule 118 ordinarily calls for reversal.

■ Rule 118 requires specific rulings for separate grounds or parts of motions. The six parts of the motion sustained should have been addressed and ruled upon separately when the ruling was made. In ruling on plaintiff's motion for new trial the trial court once again failed to separately address the six parts of the motion. However the trial court then did exhaustively detail his views on res ipsa and explained why he believed the doctrine inapplicable.

Under *Ruby* a trial court invites reversal by failing to comply with rule 118. Such an invitation was extended in this case. However, in the interests of judicial economy, we decline the invitation. If we were to remand the case for compliance with the rule the trial court could not explain his views more thoroughly than the record shows he now has. Such would be the only purpose of a remand.

We believe the failure to comply with rule 118 in this case is of the exceptional sort which does not call for reversal.

Affirmed.