**Laura M. BREWSTER, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant/Third–Party Plaintiff,**

**v.**

**TAYLOR INDUSTRIES, INC., Third–Party Defendant.**

**No. 94–1422.**

Supreme Court of Iowa.

Jan. 17, 1996.

Richard Blane, II until his withdrawal, and Ronald A. Riley and John E. Swanson of Hansen, McClintock & Riley, Des Moines, for plaintiff.

Richard L. Richards, Assistant United States Attorney, for defendant.

LAVORATO, Justice.

This case comes to us on a certified question from the federal district court. The plaintiff was injured when the automatic doors of the defendant's hospital closed on her while she was walking through them. We must decide whether the doctrine of res ipsa loquitur precludes summary judgment for the defendant when the only facts are the occurrence and the injury. We conclude the doctrine does preclude summary judgment in these circumstances, and we therefore answer the question yes.

I. *Background Facts.*

The federal district court found the following facts in its order on separate summary judgment motions by the defendant and third-party defendant. In 1982 the Veterans Administration Medical Center (VAMC) in Des Moines completed construction of a new emergency room. Subcontractor Taylor Industries (Taylor) was responsible for assembling and installing all automatic doors on the project. Taylor installed the door system properly. At the time of the accident underpinning this cause of action, the door system was in compliance with applicable design and safety standards.

Taylor installed the doors under particular specifications. These included (1) installing overhead mounted detectors with time delay switches to control the doors, (2) adjustability of the time delay switches between three and sixty seconds, and (3) electric eyes to prevent each door from closing when a person was standing in the center of the door. Relevant here is door number five. Taylor installed the time delay switches on this door and set them at a fixed time interval.

At the time of installation, a Taylor representative showed a VAMC employee how to operate and maintain the door system and how to adjust the door's time delay. VAMC personnel completed the routine or normal daily maintenance of the automatic doors.

After installation of the doors and before January 29, 1990, Taylor twice provided service on the doors. In March 1987 Taylor serviced the track guide. In July 1988 Taylor installed a new floor-mounted brace assembly. On both occasions door number five was operating normally and complied with all industry standards. At all relevant times, door number five had a warning sign. The

sign, in capital letters, said: "CAUTION" "AUTOMATIC DOORS" "IN CASE OF EMERGENCY PUSH."

Taylor had no service or maintenance agreements with VAMC for its automatic doors. Taylor provided maintenance or service on a "call as needed" basis.

On January 29, 1990, Laura Brewster (Brewster) drove her husband James to the emergency room at VAMC. After James was taken into the emergency room, Brewster waited in the vestibule area with her sister, Dorothy Mayo (Mayo). Brewster asked Mayo to move Brewster's car from the emergency room entrance and Mayo left to do so.

At some point Brewster left the vestibule area to check on Mayo's progress in moving the car. Brewster approached door number five, and the door opened. Brewster entered the doorway at a normal rate of speed. The automatic doors closed on her and pinned her between them.

Brewster attempted to free herself with her hands. The doors opened. As they did Brewster fell backwards against a wall. She then fell to the floor. When Brewster fell to the floor, she heard a crack.

VAMC employees took Brewster to the emergency room. X-rays revealed Brewster had suffered a broken hip as a result of the accident.

Following Brewster's accident, Taylor installed time adjustable switches to the automatic doors at VAMC.

II. *Background Proceedings.*

Brewster filed a specific negligence claim, and a general negligence claim based upon res ipsa loquitur, against the United States in federal district court under the Federal Tort Claims Act in November 1991. *See* 28 U.S.C. §§ 2671–80. The suit was against the United States as owner of the hospital. The United States answered, denying liability. Later the United States filed a third-party complaint naming Taylor as a third-party defendant. The third-party complaint requested contribution or indemnity for (1) negligence, (2) strict liability, and (3) breach of implied warranties of merchantability and fitness.

The United States and Taylor filed separate motions for summary judgment. *See* Fed.R.Civ.P. 56. In May 1994 all parties filed a consent to proceed before a United States magistrate judge. *See* 28 U.S.C. § 636(c).

In August 1994—after a hearing on the motions and consideration of posthearing briefs by the parties—the federal magistrate entered a three-part order on the motions. First, the magistrate granted Taylor's summary judgment motion against the United States on all three third-party claims. Summary judgment for Taylor on all three of the United States' third-party claims against it removed Taylor as a party to this action. Second, the magistrate granted the United States summary judgment against Brewster on Brewster's specific negligence claim. Last, the magistrate certified the question involving application of the res ipsa loquitur doctrine under Iowa law. The magistrate did so pursuant to Iowa Code section 684A.1 and local rule 23 of the local rules of the United States district court for the northern and southern districts of Iowa. *See also* Iowa R.App.P. 451–61. The magistrate deferred decision on Brewster's general negligence claim against the United States pending certification of the res ipsa loquitur question to us.

On the magistrate's own motion, an order certifying the question to our court was filed in September.

III. *Res Ipsa Loquitur: Does it Preclude Summary Judgment Under the Facts Presented?*

A. *Certified question.* The certified question is:

> Where an appliance on land causes injury to an invitee to those premises and the owner of the land has exclusive control over the premises, but the evidence is limited to only the occurrence of the accident and the plaintiff's injuries, under Iowa law does the doctrine of res ipsa loquitur preclude the granting of summary judgment?

B. *Circumstantial evidence and res ipsa loquitur.* Negligence must be proved, and "[t]he mere fact that an accident ... has occurred, with nothing more, is not evidence...." W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 39, at 242 (5th ed. 1984) [hereinafter Prosser]. To establish negligence, the plaintiff must produce "evidence from which reasonable persons may conclude that, upon the whole, it is more likely that the event was caused by negligence than that it was not." *Id.*

Negligence, however, is a fact and "like any other fact, may be proved by circumstantial evidence." *Id.* Circumstantial evidence is the proof "of one fact, or of a set of facts, from which the existence of the fact to be determined may reasonably be inferred." *Id.* Circumstantial evidence involves two things: (1) "the assertion of witnesses as to what they have observed," and (2) "a process of reasoning, or inference, by which a conclusion is drawn." *Id.* Circumstantial evidence "must be based upon the evidence given, together with a sufficient background of human experience to justify the conclusion." *Id.* at 243.

When the plaintiff uses circumstantial evidence to establish negligence, the inference drawn "must cover all of the necessary elements of negligence, and must point to a breach of the defendant's duty." *Id.* As Prosser illustrates,

> [t]he mere fact of the presence of a banana peel on a floor may not be sufficient to show that it has been there long enough for reasonable care to require the defendant to discover and remove it, but if it is "black, flattened out and gritty," the conclusion may reasonably be drawn. It is for the court to determine, in the first instance, whether reasonable persons on the jury may draw it.

*Id.* (citations omitted).

Res ipsa loquitur (Latin phrase for "the thing speaks for itself") is one type of circumstantial evidence. *Id.* Res ipsa loquitur had its genesis in *Byrne v. Boadle,* 2 H. & C. 722, 159 Eng.Rep. 299 (1863). *Byrne* involved the classic case in which a barrel of flour rolled out of a warehouse window and landed upon a passing pedestrian. In the beginning, res ipsa loquitur "was nothing more than a reasonable conclusion, from the circumstances of an unusual accident, that it was probably the defendant's fault." Prosser at 243. From there, res ipsa loquitur grew to cover two principles: one was concerned with the sufficiency of circumstantial evidence; the other was concerned with the burden of proof. *Id.* From this fusion, the "doctrine" of res ipsa loquitur developed. *Id.*

According to Prosser, the statement of the doctrine most often quoted is this:

> There must be reasonable evidence of negligence; but where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care.

*Id.* at 244 (citing *In Scott v. London & St. Katherine Docks Co.,* 3 H. & C. 596, 159 Eng.Rep. 665 (1865)).

The second requirement—the accident is one such as in the ordinary course of things does not happen in the absence of negligence—is another way of stating a principle of circumstantial evidence. That principle requires that the event must be such that in the light of ordinary experience the event gives rise to an inference of negligence on someone's part. Based on this principle, courts have applied res ipsa loquitur to a wide range of events: objects falling from defendant's premises, falling elevators, collapsing buildings, and boiler explosions. Prosser at 244–45. As Prosser notes, "[t]here is an element of drama, and of the freakish and improbable in a good many of these cases." *Id.* at 245. On the other hand, even common place events can call for the application of res ipsa loquitur. *Id.* at 246.

The purpose of the "under the management of defendant" requirement is "to link the defendant with the probability, already established, that the accident was negligently caused." *Id.* at 248. Failure to con-

nect the defendant with the negligent event defeats the application of res ipsa loquitur.

C. *Res ipsa loquitur under Iowa law.* Like Prosser, we view res ipsa loquitur as a rule of evidence. Under Iowa law, res ipsa loquitur applies when "(1) the injury is caused by an instrumentality under the exclusive control of the defendant, and (2) the occurrence is such as in the ordinary course of things would not happen if reasonable care had been used." *Mastland, Inc. v. Evans Furniture, Inc.*, 498 N.W.2d 682, 686 (Iowa 1993); *see also* Prosser at 244 (tracing the American version of res ipsa loquitur to the first edition of Wigmore on Evidence). "If there is substantial evidence to support both elements, the happening of the injury permits—but does not compel—an inference that the defendant was negligent." *Mastland*, 498 N.W.2d at 686; *see also* Prosser at 258 ("The inference of negligence to be drawn from the circumstances is left to the jury. They are permitted, but not compelled to find it."). "Evidence is substantial if a reasonable mind could accept it as adequate to reach the same findings." *Mastland*, 498 N.W.2d at 684.

As we said, res ipsa loquitur is no more than one form of circumstantial evidence. If "there is no direct evidence to show cause of injury, and the circumstantial evidence indicates that the negligence of the defendant is the most plausible explanation for the injury," res ipsa loquitur applies. Prosser at 257. As one court put it, res ipsa loquitur

> is not an attempt to infer negligence from an apparent cause, but to infer the cause of the injury from the naked fact of injury, and then to superadd the further inference that this inferred cause proceeded from negligence.

*Benedick v. Potts*, 88 Md. 52, 40 A. 1067, 1069 (1898). *See also* Prosser at 247–48 ("In many cases the inference to be drawn is a double one, that the accident was caused in a particular manner, and that the defendant's conduct with reference to that cause was negligent. The inference of negligence may arise either where a definite cause is known, or where the accident is more or less a mystery, with no particular cause indicated.").

Procedurally, if the plaintiff produces substantial evidence as to both prongs of res ipsa loquitur the plaintiff overcomes a motion for directed verdict. At this point the plaintiff simply has the right to have the case submitted to the jury on plaintiff's general negligence theory.

The burden of persuasion, however, remains with the plaintiff. The defendant has no burden to introduce any evidence. However, if the defendant fails to do so, the defendant runs the risk of the jury finding for the plaintiff. Prosser at 258. The reason is clear:

> [I]n the ordinary case, such as that of an automobile unaccountably leaving the highway ... reasonable persons may differ as to the conclusion to be drawn, both as to the probable cause of the event and as to the likelihood that negligence was associated with it. Other possibilities than negligence are in the case, which counsel should be entitled to argue to the jury; and the facts are not so definitely proved that the court can rule on them as a matter of law. In other words, many inferences are possible, and none of them is so clear that the court can say that it is compulsory.

*Id.*

All this is another way of saying that res ipsa loquitur permits the jury to infer negligence from the facts, but the jury is not required to draw this inference. The jury simply weighs the circumstantial evidence but in the end may or may not accept it as sufficient as to negligence or causation.

If the defendant chooses to offer rebutting evidence, then the jury must balance

> any inference of negligence to be drawn from the circumstances of the case, which the jury may choose to draw or reject, and which has weight only so long as reasonable persons may still draw it from the facts in evidence.

*Id.* at 261. At the close of all the evidence, the defendant can only be successful on a motion for directed verdict if the defendant has produced evidence that "will destroy any reasonable inference of negligence, or so

completely contradict it that reasonable persons could no longer accept it." *Id.* In other words, the defendant's rebutting evidence must be so strong that the court can say as a matter of law that res ipsa loquitur does not apply.

We permit the plaintiff to plead and the district court to submit to the jury both specific negligence and general negligence under the res ipsa loquitur doctrine. *Reilly v. Straub,* 282 N.W.2d 688, 693–94 (Iowa 1979). Both theories are submitted alternatively. If the jury finds for the plaintiff on specific negligence, it should not consider liability under the res ipsa loquitur doctrine. *Id.* at 694.

Our rule is that "the res ipsa [loquitur] inference of negligence [can] not be relied on unless within the common experience of lay persons the occurrence [is] such that in the ordinary course of things it would not have happened if reasonable care had been used." *Id.* As we said, this common experience requirement is "another way of stating an obvious principle of circumstantial evidence: that the event must be such that in the light of ordinary experience [the event] gives rise to an inference that someone must have been negligent." Prosser at 244. This ordinary experience is one common to the whole community, upon which the jury is simply permitted to rely. *Id.* at 247. "[T]his common experience may include the common experience of experts." *Reilly,* 282 N.W.2d at 694; *see also* Prosser at 247.

Because res ipsa loquitur applies to civil cases only, a plaintiff is not required to eliminate with certainty all other possible causes or inferences. The plaintiff need only produce evidence from which a reasonable person could say that on the whole it is more likely than not that there was negligence associated with the cause of the event. If the court is unable to say that the jury could not come to this conclusion, res ipsa loquitur applies. Prosser at 248. This is another way of saying there is substantial evidence to support the common experience prong of res ipsa loquitur.

We do not allow res ipsa loquitur to apply "where there is direct evidence as to the precise cause of the injury and all the facts and circumstances attending the occurrence appear." *Reilly,* 282 N.W.2d at 694. As we pointed out in *Reilly,*

> [i]n cases like these the underlying reason frequently advanced for application of the res ipsa [loquitur] doctrine is not present: that is, the chief evidence of the true cause of plaintiff's injury is practically inaccessible to plaintiff but accessible to defendant.

*Id.*

*Reilly* also teaches, however, that proof of the cause of the injury will not necessarily avoid application of the res ipsa loquitur doctrine:

> However, proof of the cause of an injury or loss will not necessarily avoid application of the res ipsa [loquitur] doctrine. Care should be taken to distinguish those situations in which evidence of the cause of an injury or loss is so strong and extensive as to leave nothing for inference and those which establish the cause but still raise only an inference as to defendant's negligence.

*Id.* (citation omitted); *see also id.* at 695 (evidence as to cause of injury was overwhelming but there remained unresolved question of defendant's alleged negligence with regard to cause of injury; held that res ipsa loquitur was properly submitted to jury); Prosser at 260 ("[T]he introduction of some evidence which tends to show specific acts of negligence on the part of the defendant, but which does not purport to furnish a full and complete explanation of the occurrence, does not destroy the inferences which are consistent with the evidence, and so does not deprive the plaintiff of the benefit of res ipsa loquitur.").

D. *The merits.* In the context of a summary judgment motion, we have said this about res ipsa loquitur:

> If there is sufficient competent evidence of the existence of the foundation of facts to generate an inference of negligence under [the] res ipsa loquitur doctrine, then summary judgment is not appropriate and the issue of general negligence should be submitted to the jury. If expert testimony is required to establish general negligence

or the foundational facts and expert testimony is unavailable, then summary judgment is appropriate.

*Welte v. Bello,* 482 N.W.2d 437, 440 (Iowa 1992) (citation omitted). So to preclude summary judgment on a claim of general negligence predicated upon res ipsa loquitur, there must be a genuine issue of material fact—that is, sufficient evidence to generate a jury question—as to both prongs of the res ipsa loquitur doctrine. *See* Fed.R.Civ.P. 56; Iowa R.Civ.P. 237(c) (If there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law, the court should grant summary judgment.).

Here the magistrate concluded as a matter of law that the automatic doors were under the exclusive control of VAMC at the time of the accident. This is the first prong of the res ipsa loquitur doctrine and is conceded for the purpose of the summary judgment motions. The fighting issue is whether there is a genuine issue of material fact as to the second prong of the doctrine: whether the premature closing of the automatic doors is such as in the ordinary course of things would not have happen if reasonable care had been used.

A number of courts have considered whether res ipsa loquitur should apply in cases of an automatic door malfunction. All but two have held that res ipsa loquitur should apply. The leading case applying the doctrine is *Rose v. Port of New York Authority,* 61 N.J. 129, 293 A.2d 371 (1972). In *Rose,* the plaintiff was injured when he walked into or was struck by an automatic glass door. As the plaintiff approached the door to go through, it opened and then suddenly closed. The intermediate appellate court reversed a verdict based upon res ipsa loquitur, partly because there was no proof as to any actual malfunctioning of the door. *Id.* at 373.

The New Jersey Supreme Court in *Rose* reversed the appellate court's decision and reinstated the verdict. In doing so the court said:

> Whether we refer to this as the rule of res ipsa loquitur or simply say that the circumstances are such as to give rise to an inference that defendant was negligent, is perhaps no great matter. Here the occurrence bespeaks negligence. Members of the public passing through automatic doors, whether in an airport, office building or supermarket do so generally without sustaining injury. What happened to the plaintiff here is fortunately unusual and not commonplace. It strongly suggests a malfunction which in turn suggests neglect.
>
> .... That the door did not function properly seems highly probable, but it should not be the burden of the plaintiff to come forward with proofs as to the precise nature of the probable malfunction. His expert witness did suggest several things that might have gone wrong; he was hardly in a position to pinpoint the actual operational failure that did occur. Such a task might very likely be insuperable.

*Id.* at 375.

As we said, other courts have applied res ipsa loquitur in cases involving automatic doors that malfunction. *See, e.g., Tarara v. Dayton Hudson Corp.,* 36 Mass.App.Ct. 942, 629 N.E.2d 1352, 1353 (1994) (genuine issue of material fact existed, precluding summary judgment for store owner, on whether store owner was negligent in allowing automatic doors to close on plaintiff and cause her serious injury, even if store owner did not know of any defect in doors and nothing had given prior indication of any defect); *Brown v. Scrivner, Inc.,* 241 Neb. 286, 488 N.W.2d 17, 18–19 (1992) (reversing summary judgment and holding that application of res ipsa loquitur in action against grocer arising from injury to patron allegedly caused by malfunctioning automatic door was not defeated by evidence suggesting that (1) doors were not regularly inspected, and (2) on windy days grocery store sometimes had trouble with doors and would lock them in open position but that was not done at time of injury; patron was unable to allege or prove particular act of negligence which caused injury) ("Automatic doors do not, in the ordinary course of things, cause injury to those who pass through them. A reasonable person could conclude that it is more likely than not that there was negligence associated with the

automatic door's malfunction."); *Landmark Hotel & Casino, Inc. v. Moore,* 104 Nev. 297, 757 P.2d 361, 363–64 (1988) (per curiam) (premature closing of automatic sliding glass doors was not type of accident that would ordinarily occur in absence of negligence, so that instruction on res ipsa loquitur was proper) ("Automatic sliding glass doors of the type that injured [the plaintiff] are ubiquitous, affording the public safe ingress and egress to countless facilities on a daily basis. What happened to [the plaintiff] is unusual; it strongly suggests a malfunction attributable to negligence."); *Madden v. Carolina Door Controls, Inc.,* 117 N.C.App. 56, 449 S.E.2d 769, 771–73 (1994) (jury verdict allowed to stand against company servicing automatic doors; plaintiff was injured when such doors closed on plaintiff right after defendant had serviced the doors); *McDonald v. Aliquippa Hosp.,* 414 Pa.Super. 317, 606 A.2d 1218, 1220 (1992) (failure of automatic doors in hospital corridor to sense object in their path and remain open until safe passage had been secured was malfunction which would not ordinarily occur if the doors had been inspected and properly maintained, thus giving rise to inference of negligence).

As we also mentioned, two cases take a contrary position. *See Hisey v. Cashway Supermarkets, Inc.,* 77 N.M. 638, 426 P.2d 784, 786 (1967); *Johnston v. Grand Union Co.,* 189 Ga.App. 270, 375 S.E.2d 249, 250 (1988). In *Hisey,* proof regarding application of res ipsa loquitur was limited to the occurrence and the injuries. The court relied heavily on the fact that there was no malfunction before or after the occurrence in question. The court made it clear it would require some evidence from which a factfinder could infer that the malfunction resulted from a prior defect or condition that was not properly repaired. *Hisey,* 426 P.2d at 785–86.

Likewise, in *Johnston,* evidence was limited to the occurrence and the injuries. The court relied heavily on two facts: (1) the malfunction had occurred only once—when the plaintiff was injured, and (2) there was no evidence as to why the doors malfunctioned on this one occasion. Based on these two facts, the court concluded that there was no evidence from which a factfinder could infer the defendant store owner knew or should have known the doors might close unexpectedly. *Johnston,* 375 S.E.2d at 250. In short, the court would require knowledge of a defect or dangerous condition on the part of the defendant before allowing a plaintiff to rely on res ipsa loquitur.

Taking its cue from *Hisey* and *Johnston,* the United States argues

> the solitary fact that the automatic door allegedly closed unexpectedly on Brewster on one occasion, for no reason that has been ascertained, does not constitute substantial evidence that the occurrence is such as in the ordinary course of things would not happen if reasonable care had been used.

In addition, the United States thinks it is not within a layperson's common knowledge whether the automatic door malfunction would not have happened had reasonable care been used. The United States would require Brewster to provide expert evidence on the question of causation: why the door malfunctioned on this single, isolated occasion.

We agree with the majority of courts that have concluded an automatic door malfunction does not occur in the absence of negligence. We think it is within the common experience of lay people to come to this conclusion. In other words, reasonable people could conclude that it is more likely than not that there is negligence associated with the automatic door's malfunction.

We also think it is not incumbent upon a plaintiff to come forward with proof as to the precise nature of the probable malfunction. It is precisely because facts proving causation in personal injury cases are generally within the exclusive dominion and control of the defendant that the res ipsa loquitur doctrine developed. The doctrine in effect "levels the playing field" for the injured plaintiff. In fact, proving the precise cause could—under Iowa law—deprive the plaintiff of the doctrine's benefit.

It is readily apparent that this analysis is contra to the rationale in *Hisey* and *Johnston.* We think *Hisey* and *Johnston* depart

from the traditional view of res ipsa loquitur. The rationale of these two cases runs counter to the very reasons why the doctrine developed in the first place.

Here the malfunctioning of the automatic doors and Brewster's resulting injuries generate a material fact question as to the second prong of the res ipsa loquitur doctrine. A factfinder can—but is not compelled to—infer that the malfunction happened because of the VAMC's negligence in its care and maintenance of the doors.

IV. *Disposition.*

In sum, we conclude that the occurrence and the injury raise a genuine issue of material fact as to Brewster's general negligence claim predicated on res ipsa loquitur. Our answer to the certified question is yes.

**CERTIFIED QUESTION ANSWERED.**

All justices concur except TERNUS, J., who dissents without opinion.