# IN THE SUPREME COURT OF IOWA

No. 22–1337

Submitted October 24, 2023—Filed February 2, 2024

**SIMRANJIT SINGH,**

Appellant,

vs.

**MICHAEL WALTER MCDERMOTT,**

Appellee.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Cass County, Craig M. Dreismeier, Judge.

The driver of a truck seeks further review of a court of appeals decision affirming the district court's grant of summary judgment in favor of the owner of a cow with which the truck collided. **DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**

May, J., delivered the opinion of the court, in which all justices joined.

Gary Dickey (argued) and Matthew M. Sahag of Dickey, Campbell & Sahag Law Firm, P.L.C., Des Moines, for appellant.

Raymond E. Walden (argued), Michael T. Gibbons, and Christopher D. Jerram of Woodke & Gibbons, P.C., L.L.O., Omaha, Nebraska, for appellee.

**MAY, Justice.**

One night, a cow strayed onto Interstate 80 (I-80). A truck hit the cow. The truck's driver was injured. The driver sued the cow's owner for negligence. As trial approached, the cow's owner moved for summary judgment. The cow's owner argued that there was insufficient evidence that he was negligent. The district court agreed and granted summary judgment. The driver appealed. The court of appeals affirmed. We granted further review. Following our review, we conclude that the record does not contain sufficient evidence to support a finding of negligence by the cow's owner. We affirm the district court and the court of appeals.

### I. Background.

In the early morning hours of January 26, 2019, Simranjit Singh was driving a Peterbilt truck on I-80 in Cass County. Singh was hauling a load of fish from Washington (state) to Massachusetts.

A cow appeared on the road. Singh could not avoid the cow. Singh's truck hit the cow. Singh was hurt. His truck was damaged. The cow perished.

The cow was owned by the defendant, Michael McDermott. McDermott has property that abuts I-80. This property has fences and gates for the confinement of cattle.

In August 2019, Singh brought this case against McDermott. Singh's petition pleaded a single count of negligence. The petition claimed "McDermott was negligent in allowing his cow to travel into the highway where Singh was traveling."

Trial was initially set for March 2021. After multiple continuances, trial was ultimately rescheduled for August 2022. The delays were partly due to COVID-19. Even so, the district court observed, the parties had an "extensive amount of time for discovery."

In June 2022, McDermott moved for summary judgment. McDermott argued that, based on the discovery produced, it appeared that Singh could present no evidence that McDermott was negligent.

Singh resisted. Singh argued that McDermott's "negligence lies in the undisputed fact that the cow strayed onto I-80 in the middle of the night and was unattended at the time [that Singh's] truck collided with it."

The district court granted McDermott's motion and dismissed the case. Singh appealed. We transferred the case to the court of appeals. A panel of the court affirmed the grant of summary judgment. Singh then applied for further review. We granted Singh's application.

## II. Standard of Review.

On further review, the central question before us is whether the district court committed legal error by granting summary judgment. *Konchar v. Pins*, 989 N.W.2d 150, 157 (Iowa 2023). Summary judgment is proper if "there is no genuine issue as to any material fact[,] and . . . the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). A defendant may move for summary judgment "at any time, . . . with or without supporting affidavits." *Id.* r. 1.981(2). A defendant may support the motion by showing the district court "that the proof available to the [plaintiff] at trial will be limited to evidence that will not be sufficient to sustain a right to relief." *Griglione v. Martin*, 525 N.W.2d 810, 814 (Iowa 1994), *overruled on other grounds in Winger v. CM Holdings, L.L.C.*, 881 N.W.2d 433 (Iowa 2016). A motion of this kind creates a "put up or shut up moment in a lawsuit." *McNeal v. Wapello Cnty.*, 985 N.W.2d 484, 490 (Iowa 2023) (quoting *Garrison v. New Fashion Pork LLP*, 977 N.W.2d 67, 88 (Iowa 2022)). It requires the plaintiff to "show what evidence it has that would" permit a rational jury to enter a lawful verdict in favor of the plaintiff. *Id.* (quoting *Garrison*, 977 N.W.2d at 88). If the plaintiff fails to carry this burden, summary

judgment is proper. *See id.*; *see also Bitner v. Ottumwa Cmty. Sch. Dist.*, 549 N.W.2d 295, 300 (Iowa 1996) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986))).

**III. Analysis.**

We now consider whether the record here contains sufficient evidence to support a finding that McDermott was negligent. We begin our inquiry with a a review of the legal principles governing negligence cases.

Iowa law "does not presume negligence." *Pardey v. Inc. Town of Mechanicsville*, 70 N.W. 189, 190 (Iowa 1897). And so the occurrence of an injury or accident, "without more, does not mean the defendant was negligent." *Smith v. Koslow*, 757 N.W.2d 677, 680 (Iowa 2008), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699 (Iowa 2016). "Instead, to recover for an injury, our law requires an injured person to establish" that the defendant owed "a duty of care," that the defendant "breach[ed] . . . the duty of care, and that the breach was the cause of the injuries suffered." *Id.* As will be explained, the first two elements—duty and breach—are central to our inquiry here.

**A. The Cattle Owner's Duty of Care.** We first consider the duty of care imposed upon cattle owners under Iowa law. The law in this area has changed over time. *See Klobnak v. Wildwood Hills, Inc.*, 688 N.W.2d 799, 800–02 (Iowa 2004). For much of the twentieth century, our law imposed two duties on livestock owners: a statutory duty and the traditional common-law duty. *Id.* at 801 ("The independent statutory and common-law duties were clearly articulated in the case of *Weber v. Madison*, 251 N.W.2d 523 (Iowa 1977)."). The statutory duty arose from a "fencing in" statute, which was first enacted in 1924. *Id.* at 800–01. Seventy years later, in 1994, the legislature repealed the "fencing in"

statute. *Id.* at 800. Through that repeal, the legislature removed the statutory duty. *Id.* But, as we made clear in *Klobnak v. Wildwood Hills, Inc.*, the traditional common-law duty survived the statute's repeal. *Id.* at 803. That common-law duty governs the case before us.

The common-law duty is a "duty of ordinary care." *Id.* at 801. We addressed this duty in *Flesch v. Schlue*, a case that predated the "fencing in" statute and, therefore, involved only the common-law duty. 191 N.W. 63, 63–64 (Iowa 1922). Like the case before us, *Flesch* involved an animal—a horse—that was loose on a highway and ended up being struck by a vehicle. *Id.* at 63. The question in *Flesch* was whether the horse's presence on the highway "resulted from a want of care on the part of the defendant," who owned the horse. *Id.* The horse owner's duty of care was described in this jury instruction, which we approved:

> Ordinary care by the defendant, of his horse, would be such care as an ordinarily prudent and careful farmer exercises under like circumstances. If the ordinary, careful, and prudent farmer puts his horse in a barn and shuts and latches the doors thereto, or puts it in the yard properly fenced and properly closes and secures the gates, then that would be ordinary care.

*Id.* at 63–64.

We think a similar duty of ordinary care was owed by McDermott. McDermott owed such care as an "ordinarily prudent and careful farmer exercises under like circumstances" to keep cows out of the highway. *Id.* at 63. This matches our law's broader recognition that abutting landowners are "under an obligation to use reasonable care" to avoid "creat[ing] hazards in the adjoining highway." *Thompson v. Kaczinski*, 774 N.W.2d 829, 835–36 (Iowa 2009) (quoting *Weber*, 251 N.W.2d at 527, and collecting related cases).

Now that we've explained McDermott's common-law duty, the next logical question is whether there was evidence that McDermott breached that duty.

Before reaching the breach question, though, we think it is worthwhile to add one more historical note concerning duty. As mentioned, prior to 1994, livestock owners also had a statutory duty "to restrain their animals." *Klobnak*, 688 N.W.2d at 801. As we explained in *Klobnak*, this statutory duty did not supplant the common-law duty; rather, "it merely compl[e]mented" the common-law duty. *Id.* It complemented the common-law duty by adding "a new dimension" that we described as "prima facie evidence of negligence." *Id.* This meant that the mere appearance of an animal on the highway—on its own—was "prima facie evidence" of the animal owner's negligence. *Id.*; *accord Ritchie v. Schaefer*, 120 N.W.2d 444, 446 (Iowa 1963). In plain English, this meant that if the plaintiff showed that a defendant's animal was on the highway, then the plaintiff had presented a sufficient case of negligence. *Ritchie*, 120 N.W.2d at 446. The plaintiff didn't need to present anything more. *Id.* Rather, it was up to the "defendant" to "show what care he exercised in restraining his cattle," and then "it was for the jury to decide whether [the defendant] exercised reasonable and ordinary care." *Id.* at 445. As explained, though, this prima-facie-evidence regime was purely a product of statute. Now that the "fencing in" statute has been repealed, the prima-facie-evidence rule does not apply.

**B. Evidence of Breach.** With that historical side quest out of the way, we now return to the question of breach. We ask whether the record contains evidence that would allow a finding that McDermott breached his common-law duty of ordinary care. Of course, the plaintiff—Singh—had the burden to produce evidence that McDermott breached the duty or, in other words, that McDermott was negligent. *Walls v. Jacob N. Printing Co.*, 618 N.W.2d 282, 285 (Iowa 2000) (en banc). Negligence could have been proven through direct or circumstantial evidence. *Id.*

1. *Direct evidence.* We first consider whether the record contains direct evidence of negligence by McDermott. Following our review, we find no direct evidence of negligence. The record shows no act or omission by McDermott that was inconsistent with the care that an ordinarily prudent and careful farmer would exercise in containing cattle. For instance, although the record contains many pictures of McDermott's fence, there is no evidence of any unmended defects in the fence. Nor is there evidence that McDermott failed to secure a gate. This case is not like *Flesch,* in which "[t]he defendant's gate was concededly open." 191 N.W. at 64.

Singh responds that the presence of McDermott's cow on I-80 constitutes "prima facie evidence of negligence." We cannot agree. Singh's prima-facie-evidence theory is essentially identical to the enhancement that was added to the common law because of the 1924 enactment of the "fencing in" statute. *Klobnak,* 688 N.W.2d at 801; *accord Ritchie,* 120 N.W.2d at 446. As explained, though, the legislature later chose to repeal the "fencing in" statute. *Klobnak,* 688 N.W.2d at 801. So that statute is no longer part of Iowa law. It follows that the prima-facie-evidence regime, which only existed because of the now-repealed statute, is no longer part of Iowa law. So we decline to hold that the cow's mere presence on I-80 provides sufficient evidence of McDermott's negligence.

2. *Circumstantial evidence.* Because the record does not contain direct evidence of McDermott's negligence, we now consider the question of circumstantial evidence. *Brewster v. United States*, 542 N.W.2d 524, 528 (Iowa 1996) (en banc) ("Negligence, however, is a fact and 'like any other fact, may be proved by circumstantial evidence.' " (quoting W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 39, at 242 (5th ed. 1984))). Singh claims that, under the doctrine of res ipsa loquitur, there is sufficient circumstantial evidence of McDermott's negligence. We disagree.

Like "prima facie," "res ipsa loquitur" is a term that the law has borrowed from Latin. *Banks v. Beckwith*, 762 N.W.2d 149, 151 (Iowa 2009). It means "the thing speaks for itself." *Id.* (quoting *Conner v. Menard, Inc.*, 705 N.W.2d 318, 320 (Iowa 2005)). In our law, res ipsa loquitur—or "res ipsa" for short—is a rule of circumstantial evidence. *Id.* at 151–52. It permits a negligence case to proceed to the jury if the plaintiff introduces substantial evidence that "the injury was caused by an instrumentality under the exclusive control and management of the defendant," and "the occurrence causing the injury is of such a type that in the ordinary course of things would not have happened if reasonable care had been used." *Id.* at 152. "If there is substantial evidence to support both elements, the happening of the injury permits—but does not compel—an inference that the defendant was negligent." *Id.* (quoting *Brewster*, 542 N.W.2d at 529).

a. *Exclusive control.* To decide whether res ipsa can apply here, we must first consider whether there is "substantial evidence" that Singh's injury "was caused by an instrumentality under the exclusive control and management of the defendant," McDermott. *Id.* Singh suggests that this requirement is fulfilled because it is undisputed that the "instrumentality"—the cow—was owned by McDermott. Also, it is undisputed that McDermott had land near the interstate. And it is undisputed that that land was fenced for livestock. As McDermott points out, though, the record is not clear as to whether the ill-fated cow was actually on McDermott's property on the evening of the accident. Indeed, the record contains evidence that the cow may have been pasturing on another farmer's land and, therefore, under someone else's control.

All the same, we decline to decide the case based on the "exclusive control and management" element. *Id.* Rather, we assume without deciding that substantial evidence supports that element. *Cf. Nelson v. Lindaman*, 867 N.W.2d 1, 6–7 (Iowa 2015) ("We view the evidence in the light most favorable to the

nonmoving party, who is entitled to every legitimate inference that we may draw from the record."). Specifically, we assume—as Singh asks us to—that the cow was within McDermott's fenced property near the interstate on the night of the accident.

b. *The ordinary course of things.* With this assumption in mind, we turn to the second res ipsa element, which requires substantial evidence that "the occurrence causing the injury is of such a type that in the ordinary course of things would not have happened if reasonable care had been used." *Banks*, 762 N.W.2d at 152. Naturally, this element requires the jury to understand what happens "in the ordinary course of things" when "reasonable care" is or is not used in a particular situation. *Id.*; *cf. Brookover v. Roberts Enters.*, 156 P.3d 1157, 1163 (Ariz. Ct. App. 2007) (noting that this element "requires a weighing of the probabilities as to the cause of certain events"). As the authors of the Restatement (Third) of Torts explain, "In some cases, the jury can derive its understanding of the circumstances that cause a particular type of accident from the general experience, common knowledge, and common sense of the community." Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 17 cmt. *c*, at 186 (Am. L. Inst. 2010) [hereinafter Restatement (Third)]. This is the case when "the type of accident is one with which ordinary citizens are generally familiar." *Id.* But that is not true of all kinds of accidents. So there must be a case-by-case determination. *See id.* In each case, the court must determine "whether there exists a fund of general experience and common knowledge on which the jury can draw" when evaluating the likely cause of an accident. *Id.* For some kinds of accidents, "the court may determine that a fund of common knowledge and experience is lacking" or, indeed, that common-sense reasoning runs "counter to the plaintiff's res ipsa loquitur allegations." *Id.* at 187. "In such cases, the plaintiff needs expert testimony in order to escape judgment

as a matter of law on the res ipsa claim." *Id.*; *accord Kennis v. Mercy Hosp. Med. Ctr.*, 491 N.W.2d 161, 167 (Iowa 1992) ("If expert testimony is required to establish the foundational facts [for the second element of res ipsa loquitur] and expert testimony is unavailable, then summary judgment is appropriate."). As an example, the Restatement authors note that in medical malpractice cases, jurors may "lack general knowledge" as to the causes of injuries, and therefore, plaintiffs generally need expert testimony to show that a particular injury is "usually the result of . . . negligence." Restatement (Third) § 17 cmt. *c*, illus. 1, at 187; *accord Kennis*, 491 N.W.2d at 167–68 (affirming summary judgment in medical malpractice case involving the displacement of a tube that had been surgically attached to plaintiff's bladder and noting that "[t]he question of what caused this displacement lies beyond the understanding of a layperson," "reject[ing] [the] plaintiff's claim that expert testimony is not required under his res ipsa loquitur claim").

We believe this case falls into the latter category of cases for which expert testimony was necessary. As explained, we have adopted Singh's assumption that the cow was within McDermott's fenced property on the night of the accident. And pictures in the summary judgment record show that McDermott's fence and gate were in good working order. In Singh's view, this means that the cow could only have escaped if McDermott negligently allowed the cow out by, for instance, failing to close the gate. But this assumes that "in the ordinary course of things," cows cannot escape an adequate fence after an owner has properly closed the gate. *Banks*, 762 N.W.2d at 152. And we do not presume to say that that is true. *Cf. Reed v. Molnar*, 423 N.E.2d 140, 145 (Ohio 1981) (per curiam) ("[T]here has been judicial recognition that cattle and other domestic animals can escape from perfectly adequate confines."). Nor do we think that, in 2024, the probability of cow escapes is a matter within the general experience of

most citizens. While agriculture remains vitally important to Iowa, few of us work with cattle. In any event, we don't think that the nuances of bovine behavior are so widely understood that a jury of ordinary citizens would be able to say that— "in the ordinary course of things"—a cow would not have escaped without negligence by McDermott. *Banks*, 762 N.W.2d at 152. Rather, the jury would need the assistance of expert testimony to reach that conclusion. *See Kennis*, 491 N.W.2d at 167 (observing that "expert testimony is" sometimes "required to establish the foundational facts" necessary to prove the second element of res ipsa loquitur).

Here, the record contains no expert testimony or other evidence that "in the ordinary course of things," the cow would not have escaped "if reasonable care had been used" by McDermott. *Banks*, 762 N.W.2d at 152. So the res ipsa doctrine cannot apply.

A final note: We recognize that courts in other jurisdictions have differed as to whether res ipsa can apply to cases involving animal escapes. *See, e.g.*, *Vanderwater v. Hatch*, 835 F.2d 239, 242 (10th Cir. 1987) (recognizing the split and collecting authorities). To be clear, we decline to adopt any special rule for this category of cases. Rather, we think each case should be evaluated individually under general principles of law. When plaintiffs advance res ipsa theories, Iowa courts should apply general res ipsa principles, as we have here. *See, e.g.*, *Kennis*, 491 N.W.2d at 167. If sufficient evidence is presented to establish the requirements of res ipsa loquitur, then the case should be submitted to the jury. But where, as here, sufficient evidence is not presented, dismissal is appropriate. *Cf. Brookover*, 156 P.3d at 1163 (affirming the district court's determination that res ipsa loquitur could not apply "based on the [plaintiffs'] inability to establish that [a cow–vehicle collision] is of a type that would not have occurred in the absence of negligence" and noting that the

plaintiffs "did not show that a collision between an automobile and a cow on a highway through open range territory is a type of accident that would not occur absent negligence by the cow owner" and that the plaintiffs "presented no expert testimony to that effect nor can we say that common knowledge supports their contention").

**III. Conclusion.**

Because the summary judgment record shows there was no disputed issue of material fact and McDermott was entitled to judgment as a matter of law, the district court was correct to grant summary judgment. We affirm the district court and the court of appeals.

**DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**