# IN THE COURT OF APPEALS OF IOWA

No. 24-0671
Filed April 9, 2025

**ACCESS ENERGY COOPERATIVE and LOMONT MOLDING, LLC,**
    Plaintiffs-Appellees,

**vs.**

**RUBEY LAWN CARE, LLC,**
    Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Henry County, Clinton R. Boddicker,

Judge.


        A defendant appeals the judgment entered for the plaintiffs on a negligence

claim.  **AFFIRMED.**


        William H. Larson of Klass Law Firm, L.L.P., Sioux City, for appellant.

        David J. Hellstern of Sullivan & Ward, P.C., West Des Moines, for appellee.


        Considered without oral argument by Schumacher, P.J., and Badding and

Chicchelly, JJ.

**CHICCHELLY, Judge.**

Rubey Lawn Care, LLC (Rubey Lawn) appeals the judgment awarding damages to Access Energy Cooperative (Access Energy) and Lomont Molding, LLC (Lomont) for damages to an electrical transformer. Rubey Lawn contends there is insufficient evidence showing it was negligent under the doctrine of res ipsa loquitor. Because there is substantial evidence by which a reasonable person could determine that Rubey Lawn is more likely responsible for the damage than not, we affirm.

### I. Background Facts and Proceedings.

Lomont manufactures moldings and parts at its plant in Mount Pleasant, which operates twenty-four hours per day, five days per week. A green electrical transformer owned by Access Energy is located on part of the lawn west of the plant. The transformer, which sits atop a concrete slab, has a row of evenly spaced cooling fins running vertically along its south side. The bottom of each fin is about sixteen and one-half inches above the concrete slab, and each fin extends beyond the slab by three or four inches. The height of the slab is roughly even with the surrounding ground.

Rubey Lawn began providing lawn care services to Lomont in 2012 and was the exclusive provider of that service in 2018. According to its 2018 invoices, Rubey Lawn mowed the lawn twice, applied weed control and fertilizer, and trimmed a shrub at the plant in October 2018. The second time it mowed the lawn was on October 16.

On the morning of November 6, Lomont's maintenance manager was outside the plant when he noticed discoloration on the side of the transformer. He

inspected the transformer and found mineral oil leaking from it. Access Energy advised Lomont to immediately shut down the plant to prevent potential fires or explosions. The plant ceased operating for six and one-half hours at $5574.36 per hour for a total loss of $36,233.34. Access Energy replaced the damaged transfer at a total cost of $45,267.77.

Lomont and Access Energy sued Rubey Lawn, alleging it had struck and damaged the transformer's cooling fin with its lawnmower. Photos taken after the damage was discovered show the last vertical cooling fin in the row bent and angled in toward the others. A metal rod that ran the length of the transformer in front of the cooling fins was also bent and curved directly in front of the damaged fin. One photo shows a scratch or scuff mark a few inches from the bottom of the damaged fin and a speck of orange color at the bottom corner. The plaintiffs alleged the appearance of the orange mark on the green transformer was paint transfer from the orange lawnmowers used by Rubey Lawn. The plaintiffs also alleged that nothing else orange in color was used outside at Lomont and nothing other than Rubey Lawn's mowers had been around the ground transformer in the grass yard.

Evidence presented at trial shows the transformer held 414 gallons of mineral oil at the time of manufacture. It had only 287 gallons left when inspected by the repair company, a loss of 127 gallons. An Access Energy employee who saw the leak on the day it was discovered testified that the loss was consistent with the damage occurring three weeks earlier when Rubey Lawn last mowed the area.

Jon Rubey, the owner of Rubey Lawn and the only person to mow around the transformer in 2018, denied striking the transformer with his lawnmower. Rubey testified that it was his practice to drive the lawnmower parallel to the transformer in a direction that would blow the grass clippings away from it. The non-discharge side of the mower is equipped with a one-inch-thick rubber pad, which Rubey would rest next to the concrete slab before making a pass along each side. Rubey avoided driving over the concrete slab because doing so would damage the mower's blades, which cost $140 to replace. He also explained that the mower's zero-turning radius capability allowed him to maneuver around the transformer without needing to back up.

Rubey testified about the mower's dimensions and stated it would not be possible for the mower to strike the cooling fin. Photos of Rubey's lawnmower show paint scratched or scraped away from the metal spindles that rise above the mower's front wheels as high as nineteen inches from the ground. Rubey claimed that the damage occurred on a different job site while using the mower to push picnic tables out of the way. Rubey also believed that the orange mark visible on the transformer resulted from rust, not paint.

Photos show that at the time of the leak's discovery, the grass near the transformer was dark green. Rubey opined that the grass appeared "a little long" in the photos. He concluded that the grass was longer because he failed to mow close enough to the transformer during his October 16 visit. Lomont and Access Energy claimed the grass near the transformer appears greener because it was soaked in the leaking mineral oil.

The district court found Rubey Lawn liable for negligence under the doctrine of res ipsa loquitor. It entered judgment for Lomont in the amount of $36,233.34 and for Access Energy in the amount of $45,267.77. Rubey Lawn appeals.

## II. Scope and Standard of Review.

This action was tried at law, so our review is for correction of errors at law. *See* Iowa R. App. P. 6.907. "[T]he district court's findings of fact are binding on us if they are supported by substantial evidence." *Poller v. Okoboji Classic Cars, LLC*, 960 N.W.2d 496, 509 (Iowa 2021). Substantial evidence is evidence that a reasonable mind would accept as adequate to reach the same finding. *Crow v. Simpson*, 871 N.W.2d 98, 105 (Iowa 2015). "We view the evidence in the light most favorable to the trial court's judgment." *Brokaw v. Winfield-Mt. Union Cmty. Sch. Dist.*, 788 N.W.2d 386, 388 (Iowa 2010) (internal quotation marks and citation omitted).

## III. Discussion.

Rubey Lawn challenges the showing that its negligence damaged the electrical transformer under the doctrine of res ipsa loquitor. To recover on a negligence claim, a plaintiff must show the defendant owed a duty of care, the defendant breached that duty, and the breach caused injury. *Singh v. McDermott*, 2 N.W.3d 422, 425 (Iowa 2024). The fighting issue on appeal is whether the transformer was damaged by Rubey Lawn's breach of a duty of care. In resolving this question, we first look for direct evidence of the defendant's breach. *Id.* at 426. If there is no direct evidence that the defendant's breach caused damage, the fact finder can consider if there is circumstantial evidence of negligence. *See id.* at 427.

A plaintiff can prove negligence with circumstantial evidence under the doctrine of res ipsa loquitor. *Id.* (stating that res ipsa loquitur "is a rule of circumstantial evidence"). The doctrine permits the fact finder to infer a defendant's negligence from the fact of injury when substantial evidence shows two things. *See id.* First, substantial evidence must show that "the injury was caused by an instrumentality under the exclusive control and management of the defendant." *Id.* (citation omitted). Second, substantial evidence must show that "the occurrence causing the injury is of such a type that in the ordinary course of things would not have happened if reasonable care had been used." *Id.* (citation omitted). Inferring negligence is allowed when both elements are met, but it is not required. *Id.*

Substantial evidence shows that the injury to the transformer would only occur if reasonable care was not exercised. The transformer's metal cooling fin was bent inward, and metal does not ordinarily bend unless some force is exerted. There is no adequate explanation for the application of such force to the transformer absent some negligent act.

The fighting question is whether substantial evidence connects Rubey Lawn to the event that damaged the transformer. *See Brewster v. United States*, 542 N.W.2d 524, 528–29 (Iowa 1996) (stating that the doctrine of res ipsa loquitur does not apply if the plaintiff fails to connect the defendant with the negligent event that caused the injury). "It is never enough for the plaintiff to prove that he was injured by the negligence of some person unidentified. It is still necessary to make the negligence point to the defendant." *Town of Reasnor v. Pyland Const. Co.*, 229 N.W.2d 269, 273 (Iowa 1975). "If the necessary causal evidence is circumstantial,

it must make plaintiffs' theory not merely possible but more probable than any other theory based on the evidence." *Palleson v. Jewell Coop. Elevator*, 219 N.W.2d 8, 13 (Iowa 1974). But a plaintiff need not eliminate all other possible causes of the event with certainty. *See Reasnor*, 229 N.W.2d at 273. It is enough to show that overall, the negligent act was more likely than not attributable to the defendant. *Id.*

The district court found sufficient evidence connecting Rubey Lawn to the damaged cooling fin. In its ruling, the court restated the evidence that led to that finding:

- Rubey [Lawn] mowed at Lomont on October 16, 2018, exactly three weeks before the damage to the transformer was noticed by [Lomont's maintenance manager].
- Jon Rubey was the only person to mow the area around the transformer in 2018.
- No other outdoor work was performed in the area around the transformer by Lomont, or anyone else, in the weeks leading up to the discovery of the leak.
- No other equipment owned by Lomont would have left the orange mark at the point of impact on the transformer.
- Lomont's only piece of equipment that is used outside and is even remotely similar to Rubey's [lawn]mower is a forklift, which is not used on the side of the building where the transformer is located.
- The mineral oil marks on the transformer indicate that the leak first started as a spray, accounting for the oil on the transformer and on the grass below, but that the leak eventually transformed into a slow drip by the time [the maintenance manager] observed it sometime later.
- The ongoing slow leak from the transformer, coupled with the fact that the transformer lost 127 gallons of mineral oil, supports the conclusion that it took considerable time to lose that amount of oil. The Court can draw a reasonable inference from this that it took several weeks for the loss of oil to occur, more than enough time to support the conclusion that the damage occurred when Rubey was mowing at Lomont on October 16.
- The bent cooling fin on the left side of the radiator where the speck of orange paint was found supports the conclusion that a collision occurred between an instrumentality that was bright orange in color.

- The speck of paint and the bent cooling fin supports the conclusion that the point of impact was where the paint transfer is seen.
- The [lawn]mower used by [Rubey Lawn] is bright orange in color. Its orange color appears to be an exact match for the mark at the point of impact on the damaged transformer. The Court rejects Rubey's opinion that the orange mark shown in the Plaintiffs' photographs is rust.
- The speck of orange paint at the point of impact was about 17 inches off the ground. The rear of the mower measures 17 inches from the ground, and the caster spindles for the mower's front wheels measure about 19 inches from the ground. This makes it possible for the mower to have hit the cooling fin. The Court rejects Rubey's contention that it was impossible for his mower to have struck the transformer. This is especially true when one accounts for the fact that the mower was traveling on bumpy, uneven ground which could have caused the front of the mower to have raised up even higher than 17 inches in the rear and 19 inches at the front.

When viewed in the light most favorable to the district court's judgment, a reasonable person could find it is more likely than not the transformer was damaged when Rubey Lawn mowed on October 16. Although Rubey Lawn points to the evidence supporting a different conclusion, the district court either rejected it or gave more weight to other evidence. We are not free to substitute our findings for those made by the district court simply because the evidence supports different inferences. *See Walsh v. Nelson*, 622 N.W.2d 499, 502 (Iowa 2001). As the trier of fact, it was the district court's prerogative to determine which evidence is entitled to belief. *See Claus v. Whyle*, 526 N.W.2d 519, 524 (Iowa 1994). We also recognize that questions of witness credibility are best resolved by the trial court, which had a better opportunity to evaluate it. *See id.* Because sufficient evidence supports the finding that Rubey Lawn was negligent, we affirm.

**AFFIRMED.**