Brandy CONNER, Appellant,

v.

MENARD, INC., Appellee.

No. 03–1248.

Supreme Court of Iowa.

Oct. 21, 2005.

Jeffrey S. Carter, Des Moines, for appellant.

Michael S. Roling of Peddicord, Wharton, Spencer & Hook, L.L.P., Des Moines, for appellee.

LARSON, Justice.

Brandy Conner was injured when a bundle of insulation fell on her at a Menard, Inc. store in Ankeny. Conner sued Menard on a theory of premises liability, and the jury returned a verdict finding Conner twenty percent and Menard eighty percent at fault. The jury assessed damages of $281,000. On Menard's posttrial motions, the court ordered a remittitur of $150,000. Conner appealed, based on the remittitur order, and Menard cross-appealed on the grounds the district court erred in certain evidence rulings and in submitting the case to the jury on both specific allegations of negligence and *res ipsa loquitur*. The court of appeals reversed on the last issue and remanded for a new trial; it did not address the evidence or damage issues. On further review, we affirm the decision of the court of appeals, reverse the judgment of the district court, and remand for a new trial.

## I. *Facts and Prior Proceedings.*

On July 13, 1999, Brandy and her husband, Jody, bought some home insulation from Menard and drove to the rear of the store to load it into their pickup. A Menard employee climbed up a divider separating stacks of insulation estimated to be fifteen- to eighteen-feet high. Another employee asked the Conners to put down the tailgate and open up the topper on their pickup so the insulation could be loaded. As the Conners were getting the pickup ready, Jody testified, "there was a loud noise, and then I just.... When I stepped back, I noticed that there was a bundle of insulation on top of my wife." According to him, the insulation bundle weighed seventy-five to one hundred twenty-five pounds and fell fifteen to eighteen feet. Neither Brandy nor her husband actually saw the bundle fall.

The plaintiff sued Menard, alleging specific acts of negligence and general negligence, or *res ipsa loquitur* (*res ipsa*). She claimed past and future medical expenses, pain and suffering, loss of function, and loss of income and earning capacity.

On appeal we do not address the district court's rulings on evidence or damages because we agree with the court of appeals that the case must be reversed and retried because of the *res ipsa* issue.

## III. *Analysis.*

"*Res ipsa loquitur* (Latin for 'the thing speaks for itself') is a type of circumstantial evidence," which permits à jury to circumstantially infer the cause of the injury "from the naked fact of injury, and then to superadd the further inference that this inferred cause proceeded from negligence." *Clinkscales v. Nelson Secs., Inc.*, 697 N.W.2d 836, 847 (Iowa 2005) (quoting *Benedick v. Potts*, 88 Md. 52, 40 A. 1067, 1069 (1898)). We have said that,

[i]f "there is no direct evidence to show cause of injury, and the circumstantial evidence indicates that the negligence of the defendant is the most plausible explanation for the injury," *res ipsa loquitur* applies.

*Brewster v. United States*, 542 N.W.2d 524, 529 (Iowa 1996) (citation omitted). In Iowa plaintiffs are permitted to plead, and trial courts are permitted to consider, both specific negligence and *res ipsa* in some cases. *Weyerhaeuser Co. v. Thermogas Co.*, 620 N.W.2d 819, 831 (Iowa 2000); *Reilly v. Straub*, 282 N.W.2d 688, 693–94 (Iowa 1979).

Our cases have been very circumspect in their application of *res ipsa*. For example, the doctrine does not apply if the instrumentality of injury is under the sequential, as opposed to the simultaneous, control of more than one defendant. *Novak Heating & Air Conditioning v. Carrier Corp.*, 622 N.W.2d 495, 498–99 (Iowa 2001). Also, control must be established in the defendant at the time of the negligent act, which is not necessarily the time of injury. *Weyerhaeuser*, 620 N.W.2d at 832. Notably, as pertinent to this case, the doctrine does not apply when there is direct evidence as to the precise cause of the injury and all of the facts and circumstances attending the occurrence. *Reilly*, 282 N.W.2d at 694. We have said this is because, when direct evidence is presented,

the underlying reason frequently advanced for application of the *res ipsa* doctrine is not present: ... the chief evidence of the true cause of plaintiff's injury is practically inaccessible to plaintiff but accessible to defendant.

*Id.; see also Ruud v. Grimm*, 252 Iowa 1266, 1273, 110 N.W.2d 321, 325 (1961) ("Where the precise cause of the injury clearly appears the [*res ipsa loquitur*] rule is inapplicable."); *Eaves v. City of*

*Ottumwa,* 240 Iowa 956, 968, 38 N.W.2d 761, 768 (1949) ("Where the precise cause of the injury clearly appears or is beyond dispute, of course there is no room for inference and the *res ipsa* rule has no application."). Relying on this general rule, Menard complains that giving both instructions gives a plaintiff "two bites at the apple." The plaintiff responds that, if there is sufficient direct evidence as to the details of the incident to justify a plaintiff's verdict, the addition of a *res ipsa* instruction is merely harmless error.

In this case, Menard challenged the district court's instruction on *res ipsa* on the ground that such an instruction was improper in view of the detailed evidence in the record regarding the specific cause of the accident. The plaintiff responded that this case fits into the category of cases in which both general and specific allegations of negligence may be submitted because the evidence of specific acts of negligence was not so clear as to preclude application of *res ipsa.* She points to testimony by a Menard employee that leaves some doubt about which of Menard's employees was responsible for the insulation falling.

The trial court gave the *res ipsa* instruction, based on its reading of *Reilly,* reasoning that

the evidence ... while it does tend to show some specific acts of negligence or could be interpreted that way, I think it also leaves the door open to the possibility that the complete explanation of the occurrence cannot be presented or is not within the knowledge of the parties at this time. And so I think both of those are available under the evidence in this case, so I'm going to allow [the *res ipsa* instruction].

The *Reilly* case, relied on by the district court and both litigants on appeal, was a medical malpractice case arising out of the defendant's alleged negligence in the delivery of a baby. *Reilly,* 282 N.W.2d at 689. The plaintiff introduced evidence of specific acts of negligence that allegedly caused the injury. The experts called by the parties disagreed on some of the details of the delivery. This court concluded that it was not fatal to a *res ipsa* theory that a plaintiff has also introduced evidence of specific acts of negligence. We stated:

[P]roof of the cause of an injury or loss will not necessarily avoid application of the *res ipsa* doctrine. Care should be taken to distinguish those situations in which evidence of the cause of an injury or loss is so strong and extensive as to leave nothing for inference and those which establish the cause but still raise only an inference as to defendant's negligence.

*Id.* at 694 (citation omitted). In *Reilly* we approved the court's submission of *res ipsa,* although we characterized the case as "a close one." *Id.* at 695. We noted that, despite the fact that evidence of the dynamics of the child's injury was overwhelming, the evidence failed "to pinpoint the precise cause of the injury and all of the facts and circumstances attending the occurrence." *Id.* at 696.

■ The evidence presented at trial was undisputed. The plaintiff's husband, who witnessed the incident, testified that a Menard employee tried to pull insulation from the bottom of the pile. When this did not work, the employee (and possibly two employees) climbed up the side of a divider fifteen- to eighteen-feet tall. The husband testified that a bundle of insulation fell on the plaintiff, and in fact, he believed several fell. At least one employee was at the top of the pile at the time the insulation fell. A Menard employee testified that either he or a coemployee knocked the insulation loose. An employee's incident report succinctly summarized the event:

"Customer was in the outside yard. Employee was pulling ... insulation down. Insulation knocked customer down injuring neck...."

This evidence was accessible to the plaintiff and was "so strong and extensive as to leave nothing for inference." *Reilly*, 282 N.W.2d at 694.

■■ In this case, the court gave the *res ipsa* instruction over Menard's objection that it was inapplicable in view of clear evidence of specific negligence. We review a decision by the trial court to give a challenged instruction for correction of errors at law. *In re Estate of Hagedorn*, 690 N.W.2d 84, 88 (Iowa 2004). However, error in giving a challenged instruction will not result in reversal unless the challenging party has been prejudiced by it. *Id.*

The facts of this case are reminiscent of law school and the famous case of *Byrne v. Boadle*, (1863) 2 H & C 722, 159 Eng. Rep. 299 (Exch.), in which a flour barrel rolled out of an upstairs window and struck the plaintiff. In that case, the court stated:

[H]ere the evidence before the court was[ ] that the plaintiff and his wife were passing along the Scotland Road, in Liverpool, and when they were [close] against the defendant's warehouse, the whole of which was in his occupation, used by him as a flour dealer, there came down suddenly upon the man a barrel of flour, and thus the accident occurred to the plaintiff of which he complained. This is one of those cases in which ... a presumption of negligence by defendant is raised, and it was for him, who had all the means of evidence and knowledge within his reach, to meet it. It having been shown that the defendant had the entire possession and exclusive use of this warehouse, it would be presumed that the accident arose from his want of care, unless he gave some explanation of the cause by which it was produced, which explanation the plaintiff could not be expected to give, not having the same means of knowledge.

*Byrne*, 2 H & C at ——, 159 Eng. Rep. at ——. While the facts of the present case closely resemble those in *Byrne*, our *res ipsa* law has evolved to be significantly different. The court in *Byrne* applied the *res ipsa* inference despite the fact it was clear that *somebody* in the owner's employ was responsible for the barrel's falling. This, according to the *Byrne* court, coupled with the defendant's control of the premises, was sufficient to establish the inference. *Id.* at ——. We do not propose that result here because it does not matter which of Menard's employees caused the insulation to fall; it is sufficient that *one* of its employees was responsible and that the employer would be liable under principles of *respondeat superior*. Under our general rule, as discussed above, direct evidence of the essential elements of the claim precludes the *res ipsa* inference.

■ The plaintiff seeks to avoid the application of this general rule by contending that submitting *res ipsa* together with direct evidence of the details of the incident is merely harmless error. In other words, if there is enough direct evidence to support the finding of specific negligence, why worry about adding a *res ipsa* instruction? Apparently, none of our cases have elaborated on this argument, but we think the answer is suggested by the dissent in *Reilly*. In that case, the court had instructed the jury on both specific negligence and *res ipsa*. The jury expressed doubt about whether it would find specific negligence. Nevertheless, it found for the plaintiff, and we affirmed. *Reilly*, 282 N.W.2d at 689, 697.

The dissent, however, observed:

I dissent from Division I and from the result because under this record the case should not have been submitted to the jury on the doctrine of res ipsa loquitur. The majority passes this off by saying it was a "close issue." Really there was *no* issue.

Any doubt about this was resolved by what happened during jury deliberations. The jury first returned a verdict saying it found for the plaintiff but "we find the defendant not guilty of negligence."

In the face of that finding, it was improper to send the jury back to deliberate further. The only conclusion the jury could draw was that it *should* find negligence which, of course, it promptly did.

None of this would have occurred if the court, as it should have done, had refused to submit the res ipsa count.

*Reilly,* 282 N.W.2d at 697 (LeGrand, J., dissenting).

We reject Brandy's harmless-error argument because, in a case like this, in which evidence of the "precise cause" of the injury is clear enough that a reasonable fact finder *could* find negligence but might choose *not* to, the addition of a *res ipsa* alternative is prejudicial. If the jury, on finding insufficient evidence of specific acts of negligence, were able to fall back on a *res ipsa* theory, this would in fact give the plaintiff two bites of the apple. In this case, we *do* not know the basis on which the jury assessed fault. The verdict simply found the plaintiff and defendant "at fault" twenty percent and eighty percent, respectively.

We agree with the court of appeals that the case must be remanded for a new trial.

**DECISION OF COURT OF APPEALS AFFIRMED; JUDGMENT OF** **DISTRICT COURT REVERSED; CASE REMANDED FOR NEW TRIAL.**