# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3232

_____

| | | |
|---|---|---|
| Jarrod Wagner, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Hesston Corporation; AGCO | * | District of Minnesota. |
| Corporation; AGCO Corporation of | * | |
| Delaware, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: March 13, 2006
Filed: June 8, 2006

_____

Before MURPHY, BOWMAN, and  BENTON, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Jarrod Wagner commenced this products-liability lawsuit against Hesston Corporation, AGCO Corporation, and AGCO Corporation of Delaware (collectively, "Defendants") after he was injured by a hay baler manufactured by Hesston. Wagner asserted claims of strict liability and negligence, alleging design and manufacturing defects in the baler. Wagner proffered two experts who intended to testify that the

baler was defective, but the District Court[1] excluded the proposed testimony as unreliable. Because Wagner could not prevail on any of his claims without expert testimony, the District Court entered summary judgment for Defendants. We affirm.

Wagner was injured by a Hesston 5600 Baler that was manufactured in 1974 and purchased by Wagner's father in 2000. While baling hay on July 10, 2001, Wagner noticed that the baler had stopped accepting hay. With the power supply to the baler still engaged, Wagner stepped off the tractor and approached the baler to investigate. Wagner leaned over the baler frame and placed his left hand in hay that was covering the baler's pick-up tines. The tines suddenly began to move, and Wagner's hand was pulled into the baler's compression rollers. After the passage of some time, Wagner elected to self-amputate his left hand.

Wagner brought suit, asserting that the Hesston 5600 Baler was defectively designed and manufactured. His four-count complaint alleged claims of strict liability, negligence, and breach of express and implied warranties under Minnesota law.[2] Wagner designated John Sevart and Jonathan Chaplin as experts in the design of agricultural products who would testify that the Hesston 5600 Baler was defective. In their reports, both Sevart and Chaplin opined that the baler (1) should have had a safety guard at the intake point, (2) should have had an emergency stop device, and (3) should have featured an open throat[3]—as opposed to a compression roller—design.[4] Defendants moved to exclude the opinions of Sevart and Chaplin

---

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

[2]Wagner does not appeal the dismissal of his warranty claims.

[3]The term "open throat" refers to a baler that uses an open feed intake area without compression rollers.

[4]In addition, Chaplin asserted that the manufacturer failed to instruct operators on the proper removal of blockage, that the baler's compression rollers defectively

pursuant to Rule 702 of the Federal Rules of Evidence and the principles set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Arguing that Wagner's claims could not be supported without expert testimony, Defendants further moved for the entry of summary judgment. The District Court granted both motions, and Wagner appeals.

Under the framework developed in Daubert, trial courts must serve as "gatekeepers to 'insure that proffered expert testimony is both relevant and reliable.'" Anderson v. Raymond Corp., 340 F.3d 520, 523 (8th Cir. 2003) (quoting Dancy v. Hyster Co., 127 F.3d 649, 652 (8th Cir. 1997), cert. denied, 523 U.S. 1004 (1998)). Trial courts are given broad discretion in fulfilling this gatekeeping role, and on appeal we will not disturb a decision concerning the exclusion of expert testimony absent an abuse of that discretion. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152–53 (1999).

The District Court excluded the testimony of Sevart and Chaplin on the ground that their opinions were not reliable. Rule 702 permits expert testimony only if it is "the product of reliable principles and methods."[5] In Daubert, the Supreme Court set

---

operated at different speeds, and that the warning decals on the baler were inadequate. Wagner does not appeal the District Court's decision excluding Chaplin's testimony regarding the failure to instruct and compression roller speed. It is not clear whether Wagner appeals the District Court's decision excluding Chaplin's testimony regarding the warning decals; to the extent that Wagner does appeal this decision, we affirm the District Court.

[5]In full, Rule 702 states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the

forth a number of factors that district courts may consider in assessing reliability: (1) whether the theory "can be (and has been) tested," (2) whether the theory "has been subject to peer review and publication," (3) "the known or potential rate of error," and (4) whether the theory enjoys general acceptance in the relevant scientific community. 509 U.S. at 593–94; see also Kumho Tire, 526 U.S. at 149–50 (ruling that the Daubert factors may be applied to determine the admissibility of an engineering expert's testimony). Cases decided after Daubert provide additional factors, including "whether the expertise was developed for litigation or naturally flowed from the expert's research." Lauzon v. Senco Prods., Inc., 270 F.3d 681, 687 (8th Cir. 2001). The burden is on the party offering the expert testimony to prove that it is reliable. United States v. Kehoe, 310 F.3d 579, 593 (8th Cir. 2002), cert. denied, 538 U.S. 1048 (2003).

The District Court applied these factors to the experts' three design-defect theories.[6] The District Court began by addressing each expert's proffered opinion that the absence of a guard at the feed intake point of the Hesston 5600 Baler violated basic precepts of design and rendered the baler defective. The court found that Sevart's minimal testing of this theory (via limited and largely undocumented tests performed more than twenty years ago in connection with other litigation), the slim evidence of peer review,[7] the lack of evidence showing general acceptance in the

_____

testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

[6]The District Court did not consider the third Daubert factor regarding the potential rate of error because it is not applicable to the facts of this case.

[7]We reject Wagner's argument, raised for the first time in his reply brief, that peer review does not apply to non-medical devices. Appellant's Reply Br. at 4. See Peitzmeier v. Hennessy Indus., Inc., 97 F.3d 293, 297 (8th Cir. 1996) (applying Daubert's peer-review factor to an expert's theory regarding a tire-changing machine), cert. denied, 520 U.S. 1196 (1997).

industry of safety guards for large round balers similar to the Hesston 5600, and Sevart's admission that all but one of his alternative guard designs were built in connection with litigation, all weighed against the admissibility of Sevart's testimony. Similarly, the District Court concluded that Chaplin's opinion was speculative and inadmissible because he tested his safety-guard theory by baling a single bale of hay, the test was performed on Wagner's baler for the sole purpose of this litigation, and there was no evidence of peer review or general acceptance of the theory. The District Court further noted Chaplin's concession during his deposition that his proposed alternative design was subject to clogging and maintenance problems. Next, the District Court analyzed the proposed experts' theory that the Hesston 5600 Baler was defective because it used compression rollers at the intake point rather than an open throat design that was commercially available when the Hesston 5600 Baler was manufactured in 1974. The court concluded that this theory of a reasonable alternative design was not reliable because Wagner submitted no evidence that the open throat balers on the market in 1974 produced hay bales of the quality produced by the Hesston 5600 Baler. Finally, the District Court addressed the proffered experts' theory that the Hesston 5600 Baler was defective because it lacked an emergency stop cable that could have allowed Wagner to disengage the power to the baler thereby preventing the compression rollers from grinding his hand and arm. The court first questioned whether Sevart, a mechanical engineer, was qualified to render an opinion that an operator caught in the baler would have less severe medical injuries if the compression rollers stopped rotating. Even assuming Sevart was qualified to render the opinion, the court rejected Sevart's theory as unreliable on the grounds that it had not been sufficiently tested, that evidence of peer review was minimal, that Wagner presented no evidence that emergency stop devices had been generally incorporated into compression roller hay balers, and that the theory was formulated in connection with this litigation. Because Chaplin simply adopted Sevart's theory without designing, installing, or testing an emergency stop device himself, the court also excluded Chaplin's testimony as unreliable.

Wagner argues that the District Court erred in excluding the testimony of Sevart and Chaplin because Minnesota substantive law does not require proof of an alternative feasible design in products-liability cases. In making this argument, Wagner appears to be contending that the District Court (erroneously) deemed the existence of a safer alternative feasible design an essential element in Wagner's case. We note two substantial flaws in Wagner's argument.

First, Wagner's argument is based on a faulty premise. The District Court did not require Wagner (via his experts) to present proof of an alternative feasible design as an element of his prima facie case under Minnesota law. Rather, the District Court applied Daubert's first factor—whether the scientific theory presented has been tested—in evaluating the reliability of Sevart's and Chaplin's proffered testimony. It was Sevart and Chaplin, not the District Court, who put evidence of an alternative design at issue by theorizing that the Hesston 5600 Baler was defective because it did not include a safety guard, an open throat design, and an emergency stop device (alternative designs). Had Wagner chosen to present different evidence showing that the baler was defective, evidence of an alternative feasible design need not have been discussed. Under the design-defect theory that Wagner presented, however, the District Court properly exercised its gatekeeping role when it applied federal law in analyzing whether testing of the proffered experts' theories indicated that the experts' testimony was reliable. See Unrein v. Timesavers, Inc., 394 F.3d 1008, 1011 (8th Cir. 2005) (ruling that federal law, not Minnesota substantive law, governs whether proposed expert testimony is admissible); Peitzmeier v. Hennessy Indus., Inc., 97 F.3d 293, 297 (8th Cir. 1996) (applying Daubert's testing factor in evaluating expert's theory that machine was defective because it lacked an alternate safety design), cert. denied, 520 U.S. 1196 (1997).[8]

_____

[8]Wagner correctly notes that "[o]ur cases do not require that experts manufacture a new device or prototype in order for their opinion to be admitted." Unrein, 394 F.3d at 1012. We conclude, however, that the District Court did not exclude the proffered expert opinions on the sole ground that Sevart and Chaplin did

Second, Wagner's assertion that Minnesota substantive law does not require proof of an alternative feasible design in a products-liability case is a bit misleading. Minnesota requires a plaintiff in a products-liability case to prove that the product was defective and was unreasonably dangerous. Kallio v. Ford Motor Co., 407 N.W.2d 92, 96 (Minn. 1987). To satisfy the second requirement, "the plaintiff ordinarily has the burden of showing the existence of an alternative design that was safer." Id. Indeed, the Minnesota Supreme Court has ruled that "[t]o establish a prima facie case that [a product] was unreasonably dangerous normally requires production of evidence of the existence of a feasible, alternative safer design." Id. While the Minnesota Supreme Court did not go so far as to require proof of an alternative feasible design in all defective-products cases, the Court noted that it could only conceive of "rare cases" in which "the product may be judged unreasonably dangerous because it should be removed from the market rather than be redesigned." Id. at 97 & n.8. As discussed above, Wagner's theory is that the Hesston 5600 Baler was defective and unreasonably dangerous because it could have been alternatively designed with a safety guard at the intake point, an open throat, and an emergency stop cord. Wagner did not assert that his was the "rare case[]" involving a product so dangerous that it should be removed from the market entirely. Given Wagner's own litigation theory, the District Court would have acted properly even if it had required the proffered experts to establish the existence of a feasible alternative to the Hesston 5600 Baler. See Young v. Pollock Eng'g Group, Inc., 428 F.3d 786, 788–790 (8th Cir. 2005) (discussing Minnesota's law

_____

not manufacture a feasible alternative baler. Rather, the District Court correctly evaluated the testing of the experts' theories of alternative design as a non-dispositive factor to be considered in evaluating the reliability of their testimony. The District Court considered the lack of testing in conjunction with the lack of peer review, lack of general acceptance, and evidence that the theories were developed in the context of litigation. The District Court did not abuse its discretion in finding the theories unreliable. See Kumho Tire, 526 U.S. at 151–52 ("[Daubert] made clear that its list of factors was meant to be helpful, not definitive. . . . [T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.").

on design defects and noting that "[t]estimony may be excluded if an expert fails to explain how a proposed safety modification would protect the machine's operators without compromising the machine's utility").

To the extent that Wagner attacks the District Court's ruling on other additional grounds, we will not recapitulate the District Court's impressively thorough analysis supporting its conclusions that the proposed testimony of Sevart and Chaplin was unreliable. Suffice it to say that we have studied the record, read the briefs, and heard argument and do not discern any error in the District Court's decision. "The analysis conducted by the District Court is precisely the type of analysis the decision in Daubert would appear to contemplate. Because [Wagner's] proffered expert testimony did not satisfy the criteria set out in Daubert, the District Court's preclusion of that testimony was not a clear abuse of discretion." Gier v. Educ. Serv. Unit No. 16, 66 F.3d 940, 944 (8th Cir. 1995).

Wagner concedes that "[w]ithout the testimony of Sevart and Chaplin, there are no genuine factual disputes and Wagner cannot prevail."[9] Appellant's Br. at 43. It follows that summary judgment was appropriate. See Trost v. Trek Bicycle Corp., 162 F.3d 1004, 1009 (8th Cir. 1998) (holding that where the only evidence plaintiff offered of product's defective condition under Minnesota law was expert testimony that the district court excluded, summary judgment was appropriate).

---

[9]In his reply brief, Wagner argues for the first time that he was not required to present any evidence, "expert or otherwise," on an alternative design, thus making the District Court's entry of summary judgment erroneous. Appellant's Reply Br. at 2. We note that this issue was not raised below and we will not consider it on appeal. See Wilson v. City of Des Moines, 442 F.3d 637, 642 (8th Cir. 2006); Roberts v. Apfel, 222 F.3d 466, 470 (8th Cir. 2000). In any event, we note that Wagner was required by Minnesota law to present proof of a design defect. Kallio, 407 N.W. 2d at 96. The proof of defect that he chose to present was the expert testimony of Sevart and Chaplin that the baler would have been more safe with an alternative design.

The judgment of the District Court is affirmed.

_____