Lloyd HOUSLEY, Plaintiff,

v.

ORTECK INTERNATIONAL, INC., Defendant.

No. 4:05–cv–00531–JEG.

United States District Court,
S.D. Iowa,
Central Division.

June 6, 2007.

James L. Sayre, James L. Sayre, PC, Clive, IA, for Plaintiff.

Brent B. Green, Duncan Green Brown Langeness & Eckley PC, Des Moines, IA, Thomas R. Woodrow, Holland & Knight LLP, Chicago, IL, for Defendant.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT and MOTION TO EXCLUDE EXPERT WITNESS TESTIMONY

GRITZNER, District Judge.

This matter comes before the Court on Defendant's Motion to Exclude Expert Testimony (Clerk's No. 17) and Defendant's Motion for Summary Judgment (Clerk's No. 16). Plaintiff Lloyd Housley is represented by James Sayre. Defendant Orteck International, Inc., is represented by Brent Green and Thomas Woodrow. Both motions came on for hearing April 9, 2007. The matter is fully submitted and ready for ruling.

### SUMMARY OF MATERIAL FACTS[1]

Housley owns and operates a tire sales and repair business known as "Housley Tire" in Allerton, Iowa. Orteck is a Maryland corporation in the business of selling tires to distributors for resale. On September 25, 2003, Housley purchased an Indus 11.00–16 8-ply tire from American Tire Distributors, Inc. ("American"), of Des Moines, Iowa. American had obtained

---

1. Generally the Court views the facts in a light most favorable to the nonmoving party, but the circumstances of this case modify that approach. Housley had some difficulty electronically filing a complete resistance. The Court granted additional time to correct the deficiencies, and the complete documents were filed, including a brief and statement of undisputed facts. Not included, however, was a response to Orteck's statement of un-

disputed facts. Orteck's reply brief and chambers staff alerted Housley to this absence, but he made no effort to correct it. Accordingly, under Local Rule 56.1(b), Orteck's statements of fact would be deemed admitted. At the hearing, counsel for Housley stated that he does not have the ability to deny Orteck's statement of facts at this time. Accordingly, the operation of the Local Rule causes no material prejudice to Housley.

this tire with Orteck's assistance. Defendant claims that Orteck, upon receiving the order from American, contacted Malhotra Rubbers Ltd. ("Malhotra"), an Indian company, located in New Dehli, to order the tire. The tire was then shipped directly from Malhotra to American, which then sold it to Housley. Defendant claims Orteck never possessed, stored, controlled, or saw the tires because they were shipped directly to American. Housley claims American represented to him the tire was a product of Orteck, but Housley is unable to dispute these facts as stated by Orteck.

Later on September 25, 2003, Housley attempted to install that tire on a tractor owned by Ronald Wilson. During the installation and inflation process, the tire exploded and caused injuries to Housley.

Following September 25, 2003, Housley sent a claim to Orteck and received, in response, a letter from Orteck stating that his claim was being processed. Enclosed with the letter was a warranty claim form and a check payable to Housley for the $74.22 replacement cost of the tire. Housley claims that no denial of responsibility was made by Orteck in this letter. Orteck responds that the letter merely documented Orteck was investigating the claim in order to determine its responsibility.

Also following September 25, 2003, American's insurance carrier, Universal Underwriters Group, requested that the tire be inspected by Illinois Iowa Claim Services. This inspection was done by Craig Krapfl, who concluded in his adjuster's report that there was a split in the bead of the tire and that this split likely caused the accident. Mr. Krapfl offered no opinion in his report as to what actually caused the bead split and what cause was responsible for the explosion. Mr. Krapfl stated that he could not determine why the tire failed but that the warnings on the tire were adequate. Mr. Krapfl was retained by Housley as an expert in this case and designated as an expert on May 25, 2006.

Housley had filed a Complaint in this court on September 22, 2005, and an Amended Complaint on October 4, 2005, alleging the Defendant was negligent in failing to properly inspect the tire, in improperly manufacturing the tire, in improperly assembling the tire, in improperly designing the tire, in failing to warn potential users of possible defects in the tire, in failing to provide proper instructions for the safe installation of the tire, and in failing to provide proper instruction for the safe use of the tire. Housley's Complaint alleged that Defendant's negligence was the proximate cause of the damages sustained by him. Housley also included causes of action for res ipsa loquitur and breach of implied warranty of merchantability.

Orteck filed a Motion for Summary Judgment on October 2, 2006. Therein, it alleges that Housley has no proof linking Orteck to the cause of this accident but that the facts demonstrate beyond dispute that Orteck did not manufacture the tire at issue in this dispute. Orteck alleges that because it had no duty to inspect the tire and did not manufacture the tire and that Housley failed to provide expert testimony, Orteck is entitled to summary judgment on the negligence claims. Orteck also alleges it is entitled to summary judgment on the res ipsa loquitur claim because Orteck never had exclusive control of the tire, and it is entitled to summary judgment on the breach of implied warranty of merchantability claim.

Orteck filed a Motion to Exclude the Expert Testimony of Craig J. Krapfl on October 5, 2006. Therein, it alleges that Housley's retained expert is an insurance adjuster and not a forensic tire expert and, thus, lacks the qualifications, experience,

or credentials to testify as an expert in this case.

## APPLICABLE LAW AND DISCUSSION

### Motion to Exclude Expert

The nature of the claims asserted by Housley and the circumstances of the underlying incident illustrate the pivotal importance of expert testimony offered by Housley. Accordingly, while the motions were filed in reverse order, the Court first addresses whether Housley is in position to present necessary expert evidence.

The Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, developed what has now become known as the *Daubert* Standard. 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). *Daubert* discussed Federal Rule of Evidence 702 and the trial court's role as evidentiary "gatekeeper." *Id.* at 589, 113 S.Ct. 2786. The Supreme Court stated that expert testimony must be good science, and the findings should be sufficiently "derived by the scientific method" or otherwise "supported by appropriate validation." *Id.* at 590, 113 S.Ct. 2786.

*Kumho Tire Co. v. Carmichael,* decided by the Supreme Court in 1999, removed the distinction between scientific expert testimony and technical expert testimony. 526 U.S. 137, 147–48, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). In *Kumho,* the Court found the opinions of a tire expert should be subjected to Rule 702 scrutiny. *Id.* at 157–58, 119 S.Ct. 1167. The Court in Kumho also listed out what are known as the four Daubert factors, which are "(1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; whether the theory or technique has a known or potential error rate and standards controlling the

technique's operation; (4) whether the theory or technique is generally accepted in the scientific community." *Craftsmen Limousine, Inc. v. Ford Motor Co.,* 363 F.3d 761, 776–77 (8th Cir.2004) (citing *Daubert,* 509 U.S. at 590, 113 S.Ct. 2786). *Kumho* holds that these factors are not a definitive list and that the trial judge may use the factors when they are a reasonable measure of reliability in that expert's field. *Kumho,* 526 U.S. at 150–52, 119 S.Ct. 1167. Another element that *Kumho* states a trial judge may focus on is the proposed expert's personal knowledge or experience, which make him an expert. *Id.* at 150, 119 S.Ct. 1167.

These factors and others like them are to be used by the trial court to determine whether the proposed expert testimony is both reliable and relevant. *Wagner v. Hesston Corp.,* 450 F.3d 756, 758 (8th Cir.2006); *Daubert,* 509 U.S. at 589, 113 S.Ct. 2786. The expert testimony will be "inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case." *Marmo v. Tyson Fresh Meats, Inc.,* 457 F.3d 748, 757 (8th Cir.2006). The Court is to separate expert evidence that is based on "'good grounds' from subjective speculation that masquerades as scientific knowledge." *Glastetter v. Novartis Pharms. Corp.,* 252 F.3d 986, 989 (8th Cir.2001).

Housley bases his argument on Iowa law and the refusal of the Iowa Supreme Court to adopt *Daubert* as its definitive rule regarding expert testimony. However, Iowa law is not applicable here, as this case is in federal court and the admission of expert testimony evidence is governed by the Federal Rules of Evidence. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In federal diversity lawsuits, "the question of whether expert testimony is admissible is a matter governed by federal, rather

than state, law." *McGuire v. Davidson Mfg. Corp.*, 238 F.Supp.2d 1096, 1099 (N.D.Iowa 2003) (citing *Clark v. Heidrick*, 150 F.3d 912, 914 (8th Cir.1998)).

Housley cites *Bastow v. General Motors Corp.* for the proposition that the jury is to decide whether an expert witness is credible and believable. 844 F.2d 506, 511 (8th Cir.1988). This case was decided before *Daubert*, and the text of the opinion does not support the wide proposition Housley seeks. *Bastow* actuality addresses the much more narrow proposition that it is for the jury to decide if a 'normal' witness is credible and that an 'expert' witness, such as a psychiatrist, should not testify as to the witness' credibility or character for truthfulness. *Id.* at 511. Thus, the general rule from that case is that expert testimony regarding credibility is inadmissible. *Bastow* is not helpful to the Plaintiff here. It is Mr. Krapfl's ability to offer expert opinion evidence, not his credibility, that is at issue here.

Housley further argues that Federal Rule of Evidence 702 and *Daubert* are not the applicable test, but rather Federal Rule of Evidence 403 should control. Rule 403 requires the trial judge to weigh the evidence to determine whether its probative value is outweighed by its prejudicial effect. Housley cites *Williams v. Hedican*, 561 N.W.2d 817, 831 (Iowa 1997), which in turn cites *Daubert*. The portion of *Daubert* that *Williams* cites states that the trial judge, when looking at expert testimony under Rule 702, should "be mindful of other applicable rules." *Daubert*, 509 U.S. at 594, 113 S.Ct. 2786. The Court in *Daubert* then lists some example rules, e.g., 703, 706, and 403. *Id.* at 594, 113 S.Ct. 2786. It then goes on to discuss the trial judge's consideration of Rule 403, which the judge is to do while going through the Rule 702 evaluation, and states that the judge has more control over

experts than over lay witness under Rule 403 because "expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Id.* at 595, 113 S.Ct. 2786. Here Housley seeks far too much. The *Williams* case quite clearly does not hold that Rule 403 is the "real test" to be used instead of *Daubert* when dealing with the admission of expert testimony.

The Eighth Circuit when applying the *Daubert* standard requires that a proposed expert have formal training in the area he is called to testify about or, at the minimum, some practical knowledge or experience that would provide him the necessary expertise in that area. *Garnac Grain Co. v. Blackley*, 932 F.2d 1563, 1566 (8th Cir. 1991); *Circle J Dairy, Inc. v. A.O. Smith Harvestore Products, Inc.*, 790 F.2d 694, 700 (8th Cir.1986).

Orteck argues Mr. Krapfl lacks the necessary training, experience, education, or other credentials to qualify as a forensic tire expert. He has no technical degrees or specialized training in tire failure. Rather, Defendant argues, he is an insurance adjuster and has never before been retained as an expert in any matter. His highest degree obtained is a bachelors degree in economics, and he has no background in engineering. Neither does Mr. Krapfl have certifications in any technical field relating to tires. He has never taken any formal technical courses relating to tires. In fact, Orteck argues, Mr. Krapfl does not determine the cause of the accident as an insurance adjuster but rather relies on others, such as witnesses, police officers, and sometimes cause-and-origin experts, to do that analysis. Nor does Mr. Krapfl have any experience that would qualify him as an expert. Even more fundamentally, Orteck points out that Mr. Krapfl had never adjusted a tire accident before.

Orteck then argues Mr. Krapfl lacks even a basic understanding of tire evaluation techniques or tire components. Mr. Krapfl was unable to identify any materials used for tire evaluation considered authoritative in the industry. Nor, Orteck argues, was he able to identify the Federal Motor Vehicle Safety Standards or Society of Automotive Engineers Standards that apply to tires. He is not a member of any engineering or tire-related society, nor has he ever attended any technical meetings in the tire field. Orteck argues Mr. Krapfl has no experience with reports from forensic tire experts discussing why a tire failed, nor has he witnessed a forensic tire analysis or inspection. No court has ever recognized him as a tire expert. Orteck argues that he has just a rudimentary understanding of the tire's components, particularly the bead, the very subject of his opinion in this case. Even in his report, Mr. Krapfl never exceeded his adjuster role but rather urged that the tire be x-rayed or otherwise inspected to determine the cause of the split bead. Mr. Krapfl acknowledged that he would not be able to perform that analysis but that a metallurgist or some such person would be appropriate.

█ Orteck also argues that, even if Mr. Krapfl were able to be qualified as an expert in the field, his opinions are still not based on relevant methodology and lack reliability. Rather, Defendant argues, they are the very speculative and subjective beliefs sought to be avoided by *Daubert. See Marmo,* 457 F.3d at 758; *Dairy Farmers of Am. v. Travelers Ins. Co.,* 391 F.3d 936, 943 (8th Cir.2004) (exclusion when opinion "lacked foundation and was purely speculative"). Orteck says that this is a case where there is "simply too great of an analytical gap between the data and the opinion proffered." *J.B. Hunt Transp., Inc. v. Gen. Motors Corp.,* 243 F.3d 441, 444 (8th Cir.2001). Mr. Krapfl in his report stated he believed the split in the bead was the cause of the explosion. However, Orteck argues, Mr. Krapfl admitted that he did not use any recognized inspection procedure or methodology when forming this opinion. Mr. Krapfl even stated in his report that he did not know why the split was there and suggested that additional testing could be done to determine the cause, such as x-rays to determine if the bead had indeed split.

Mr. Krapfl's opinion that the bead split was a result of manufacturing, Orteck argues, is a groundless assumption that he did not make until his deposition. In fact, Orteck argues, Mr. Krapfl admitted that he was relying on his own assumptions rather than scientific facts or methods. Finally, Orteck argues, Mr. Krapfl offered no opinion on the adequacy of the warnings on the tire.

Housley claims Mr. Krapfl need not be a forensic tire expert to be qualified as an expert. Rather, Housley argues, Mr. Krapfl is an experienced claims adjuster with many years of experience expressing opinions as to the cause of accidents. In addition, he has personal knowledge regarding installation of tires through his personal experience with his own cars. Housley argues that Mr. Krapfl's testimony is reliable because it is based on this experience, and his opinion was formed independently from this case. Given the thrust of Housley's main argument, that Iowa law and not Federal law applies, he does not advance any evidence to support Mr. Krapfl as an expert under the *Daubert* standard.

Given the arguments put forth by both the Defendant and the Plaintiff, the Court is compelled to find that Mr. Krapfl is not qualified to be considered an expert under the *Daubert* and *Kumho* standards and that his testimony would not be of assis-

tance to the trier of fact. Fed.R.Evid. 702. His experience as a claims adjuster is not sufficient to qualify him as an expert in causation of tire explosions. Even within the confines of his normal role, this case was the first time he had ever adjusted a loss involving a tire explosion. Mr. Krapfl acknowledged in his deposition testimony that he does not form his own opinions as to causation when he does his adjusting but rather relies on others, such as witnesses or experts. The only practical experience with tires that Mr. Krapfl has relates to his own personal experience mounting tires gained while working during high school and college, and yet he never had mounted a tractor tire by himself. The Court concludes this experience is not enough to qualify Mr. Krapfl as an expert in the field at issue. Nor is his educational or vocational training enough to qualify him as a tire expert in this case.

The Court also must find, as the witness essentially admits, that Mr. Krapfl's opinions are based on assumptions and speculation and not on any scientific or technical methodology. As such, they are unreliable and, under *Dairy Farmers* and *Marmo*, must not be admitted under the authority of Rule 702.

## MOTION FOR SUMMARY JUDGMENT

### I. Summary Judgment Standard.

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A summary judgment motion should be interpreted by the trial court to dispose of factually unsup-

ported claims and defenses. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Therefore, the trial judge is not to weigh the evidence and determine the truth of the matter but rather to determine whether there is a genuine issue for trial. *Id.* However, the Court is bound to view the facts in the light most favorable to the nonmoving party and to give that party the benefit of any reasonable factual inferences. *E.g.*, *Girten v. McRentals, Inc.*, 337 F.3d 979, 983 (8th Cir.2003).

While the moving party must initially make a showing of the basis for its motion and the portions of the record that support the party's assertion that there is no issue of material fact, the moving party is not required by Rule 56 to support its motion with affidavits or other similar materials negating the opponent's claim. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548).

When the moving party has carried its initial burden, the nonmoving party must proffer specific facts demonstrating the existence of a genuine issue for trial and may not rely on mere allegations. *Vaughn v. Roadway Express, Inc.*, 164 F.3d 1087, 1089 (8th Cir.1998) (citing *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548). The nonmoving party must make a satisfactory showing on every element of its case for which it has the burden of proof at trial. *Wilson v. Sw. Bell Tel. Co.*, 55 F.3d 399, 405 (8th Cir.1995); *see also Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "[T]o survive the defendant's motion, [the plaintiff] need only present evidence from which a jury

might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial." *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. 2505. It is thus the task of the trial court to "assess the adequacy of the nonmovants' response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel,* 953 F.2d at 396 (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548).

## II. Failure to Provide Expert Testimony.

■ The previous analysis demonstrates the Court must find Housley's expert, Mr. Krapfl, fails to meet the requirements of Rule 702 and the *Daubert* standard for expert witness testimony. Housley has no other expert. Orteck claims the absence of an expert witness entitles it to summary judgment under the circumstances of this case.

■ It is axiomatic that the mere fact that an accident occurred, alone, does not demonstrate that the product involved was defective. *Martin v. E–Z Mart Stores, Inc.,* 464 F.3d 827, 830 (8th Cir. 2006); *Hasselman v. Hasselman,* 596 N.W.2d 541, 546 (Iowa 1999) ("When a jury is left to speculate on whether the defendant's conduct in fact caused the plaintiff's damages, the evidence is insufficient to support a finding of proximate cause."). Orteck argues without expert testimony, Housley has demonstrated nothing more than the occurrence of an accident, which does not generate a jury question as to product liability.

Iowa does not categorically require expert testimony in every product liability case. Whether expert testimony is required ultimately depends on whether it is a fact issue upon which the jury needs assistance to reach an intelligent or correct decision.... [D]esign defect cases sometimes involve technical, scientific issues which cannot be fully understood by the average juror without some expert assistance. In such cases, expert testimony as to the defective nature of defendant's design will be an indispensable element of plaintiff's case. However, when the issues presented relate to matters which require only common knowledge and experience to understand them, the testimony of experts is not essential.

*Reed v. Chrysler Corp.,* 494 N.W.2d 224, 226–27 (Iowa 1992) (internal alteration omitted); *accord Benedict v. Zimmer, Inc.,* 405 F.Supp.2d 1026, 1032 (N.D.Iowa 2005). In instances where expert testimony is not required, "the plaintiff must supply sufficient evidence to satisfy the trial court that the jury, with its common knowledge, could reasonably find an alternative design to be practicable and feasible." *Giles v. Miners, Inc.,* 242 F.3d 810, 813 (8th Cir.2001).

The Iowa Supreme Court has adopted sections 1 and 2 of the Restatement (Third) of Torts: Product Liability (hereinafter "Products Restatement"). *Wright v. Brooke Group, Ltd.,* 652 N.W.2d 159, 167 (Iowa 2002). As the *Benedict* court noted, this approach to expert testimony requirements is consistent with the Products Restatement approach. Comment *f* to section 2 provides that when "feasibility of a reasonable alternative design is obvious and understandable to laypersons [ ] expert testimony is unnecessary to support a finding that the product should have been designed differently and more safely."

Products Restatement § 2 cmt. $f$.[2] Nor is this rule limited to design defect cases. *Anderson v. Raymond Corp.*, 340 F.3d 520, 524–25 (8th Cir.2003) (applying Arkansas law and granting summary judgment on design defect, manufacturing defect, and failure to warn claims given lack of expert testimony where alleged defect was not a matter of common experience) (citing *Dancy v. Hyster Co.*, 127 F.3d 649, 653 (8th Cir.1997) ("Lay jurors ... are not likely to possess 'common understanding' about how products are designed.")).

The Court concludes Housley must present some expert evidence to survive summary judgment. The design, manufacture, use, and installation of any tire, let alone a tractor tire, is a matter largely outside the experiences of the average juror. It is not likely to be part of the typical private consumer's interaction with the market place as would be the case with the children's toy example in comment $f$ above. Such expert testimony is required for any of Housley's negligence claims to survive. See *Benedict*, 405 F.Supp.2d at 1033 ("Regardless of what sort of defect the [plaintiffs] allege, the element of causation, which is required in both claims, *see Wright*, 652 N.W.2d at 168 (quoting Products Restatement § 1, at 5), requires the presentation of expert evidence.").

Housley has not pointed to any other evidence in the record that would generate a fact issue that the tire exploded because of a defect in the design or manufacture or that the injury could have been avoided through warnings associated with the tire. Accordingly, Orteck's motion for summary

judgment must be granted on this essential basis.

## III. Negligence or Strict Liability.

The Court having found the absence of expert testimony disposes of the negligence claims, the requirements of a claim under a theory of strict liability also would fail as a matter of law. Because the involvement of a strict liability claim was raised in the context of the resistance to the motion for summary judgment, the Court briefly addresses this issue.

Housley did not assert in his Complaint that Orteck is strictly liable for his injuries. Rather, in his resistance to the pending motion, Housley cited the elements of a cause of action for strict liability in tort to demonstrate that he has stated a claim against Orteck and that Orteck can be held liable under Iowa's product liability law.

Orteck asserts that the deadline for amending the pleadings is past; therefore, Housley may not assert strict liability claims for the first time in resistance to summary judgment. Further, Orteck asserts that it is immune from strict liability claims under Iowa Code § 613.18.

First, the Court addresses whether Housley is precluded from asserting claims of strict liability. "The federal rules, and the decisions construing them, evince a belief that when a party has a valid claim, he should recover on it regardless of his counsel's failure to perceive the true basis of the claim at the pleading stage, provided always that a late shift in the thrust of the case will not prejudice the other party in

**2.** As an example of a case not requiring expert testimony, comment $f$ notes: For example, when a manufacturer sells a soft stuffed toy with hard plastic buttons that are easily removable and likely to choke and suffocate a small child who foreseeably attempts to swallow them, the plaintiff should be able to reach

the trier of fact with a claim that buttons on such a toy should be an integral part of the toy's fabric itself (or otherwise be unremovable by an infant) without hiring an expert to demonstrate the feasibility of an alternative safer design.

maintaining his defense upon the merits." 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1219, at 192–94; *see Greenwood v. Ross,* 778 F.2d 448, 454–55 (8th Cir.1985) (quoting Wright & Miller); *see also Morgan Distrib. Co., Inc. v. Unidynamic Corp.,* 868 F.2d 992, 995 (8th Cir.1989). The Court therefore considers whether Housley's change of theory will prejudice Orteck's defense. Although the tensions between the labels given and the legal tests propounded for products liability claims sounding in negligence and strict liability were largely ignored by the parties in their briefing, the Court notes the history of Iowa products liability law that suggests the methods of proof are not so different that Orteck would be prejudiced. *See generally* Keith Miller, *Myth Surrenders to Reality: Design Defect Litigation in Iowa,* 51 Drake L.Rev. 549, 597–99 (2003) (discussing the relationship between methods of proof sounding in negligence and strict liability in Iowa design defect cases).

Clearly Housley has raised strict liability beyond the Court imposed deadline for amending pleadings; and the issue is not postured on the basis of a motion for leave to amend the Complaint, but in argument on the pending motion. In the context of a motion for leave to amend, the record would compel an analysis of whether the amendment would be futile. Ultimately the Court need not decide whether a properly posed motion for leave to amend should be granted, because the resolution of that dispute would not alter the outcome of the present motion.

Housley originally advanced claims of negligence based on improper or defective inspection, manufacture, assembly, design, warning, and instruction. In his Resistance, Housley seems to concede that Orteck did not sell or manufacture the tire, then cites a rule of strict liability apparently based on a manufacturing defect claim, but does not further elaborate on what types of claims (e.g., design defect, failure to warn) he is asserting strict liability.

Since the adoption of the Products Restatement in *Wright v. Brooke,* and well before then, Iowa law has been elusive as to what types of product liability claims may be asserted under theories of negligence and strict liability.[3] The parties rely on pre-*Wright* cases and largely avoid the depths of this issue. The Court, however, need not engage in an exhaustive analysis of the present state of Iowa product liability law. As the foregoing analysis demonstrates, Housley has not procured adequate expert testimony, nor has he pointed to any other evidence to indicate the tire exploded because of a defect in the tire or the warnings and instructions that accompanied the tire (and not because of Housley's own negligence, as Orteck asserts). A necessary element of a negligence cause of action is causation. *See, e.g., Vandelune v. 4B Elevator Components Unlimited,* 148 F.3d 943, 946 (8th Cir.1998) (plaintiff must show defendant "owed a duty to conform to a certain standard of conduct, [that the defendant breached that standard, and that the breach] was a proximate cause of [plaintiff's] injury, and damages"). Further, strict liability in products liability actions is not absolute liability. *State ex rel. Miller v. DeCoster,* 608 N.W.2d 785, 793 (Iowa 2000) (noting that a pollution statute "is not grounded on fault but calls for strict liability"). Rather, in products liability law, strict liability "merely removes the necessity for proving negligence" and "is

---

**3.** For example, in adopting the Products Restatement, the Iowa Supreme Court stated, "we prefer to label a claim based on a defective product design as a design defect claim without reference to strict liability or negligence." *Wright,* 652 N.W.2d at 169.

not a doctrine of liability without fault." *Foster v. Day & Zimmermann, Inc.*, 502 F.2d 867, 874 (8th Cir.1974).

Accordingly, it does not matter the species of claim: if Housley's claims sound in negligence, the evidentiary absences noted above require the Court to find he has failed to generate a material question of fact as to causation. If Housley's claims were to sound in strict liability, those same evidentiary absences would compel the Court to find there is no genuine issue of material fact regarding the existence of any deficiency or defect for which Orteck might otherwise have been held strictly liable.

## IV. Statutory Immunity.

■ Even assuming the evidentiary deficiencies did not dispose of the strict liability claims, and further addressing the warranty claims, the Court finds Iowa law provides immunity for Orteck. Iowa Code § 613.18 provides,

1. A person who is not the assembler, designer, or manufacturer, and who wholesales, retails, distributes, or otherwise sells a product is:

 a. Immune from any suit based upon strict liability in tort or breach of implied warranty of merchantability which arises solely from an alleged defect in the original design or manufacture of the product.

 b. Not liable for damages based upon strict liability in tort or breach of implied warranty of merchantability for the product upon proof that the manufacturer is subject to the jurisdiction of the courts of this state and has not been judicially declared insolvent.

Iowa Code § 613.18 (2005). The statute thus grants immunity in actions based in breach of implied warranty or strict liability when certain conditions are met.

■ The implied warranty of merchantability is applicable when goods are sold by a seller who is a merchant with respect to goods of that kind. Iowa Code § 554.2314 (2005). A buyer of goods covered by an implied warranty of merchantability can thus sue for breach of that warranty. A merchant is defined as a person "who deals in goods of the kind or otherwise by the person's occupation holds that person out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by the person's employment of an agent or broker or other intermediary who by the intermediary's occupation holds the intermediary out as having such knowledge or skill." *Id.* § 554.2104. The Court finds Orteck is a merchant under this definition as it deals in tires, even though it denies that it sold the specific tire in this case.

■ "Under this section [613.18], a seller who is not also an assembler, designer, or manufacturer is immune from a suit based on strict liability [and breach of implied warranty of merchantability]." *Stoffel v. Thermogas Co.*, 998 F.Supp. 1021, 1031 (N.D.Iowa 1997). The law "seeks to ensure that only those who have something to do with the design or manufacture of the product are subject to strict liability [or breach of implied warranty of merchantability]. An 'assembler' may make some mistake in assembling the product; a 'designer' may develop an unreasonably dangerous design; and a 'manufacturer' may do both. By contrast, a mere wholesaler, retailer, or distributor simply passes the product along to a purchaser, and lacks control over the design and assembly of the product." *Id.* at 1033. The court in *Stoffel* went on to say, "Section 613.18 represents a judgment by the

Iowa legislature that strict liability [and breach of implied warranty of merchantability] for design or manufacturing defects should extend only to those who have some responsibility for the design or manufacture of a product." *Id.*

One common question has to do with the interpretation of the section. The argument is that the general immunity granted in subsection (1)(a) is qualified or limited by subsection (1)(b), or, in other words, immunity from suit granted in (1)(a) only applies when the manufacturer is subject to the jurisdiction of Iowa courts and has not been declared judicially insolvent. This argument was rejected by the Iowa Supreme Court in *Bingham v. Marshall & Huschart Machinery Co.*, 485 N.W.2d 78, 80 (Iowa 1992). The Court used basic rules of statutory construction to interpret the section. *Id.* First, it stated, subsection (1) applies to "wholesalers, retailers, distributors and other sellers who are not the manufacturer or designer of the product and who do not assemble the product." *Id.* Then, the court looked at the subdivisions within subsection (1), stating, "Paragraph 613.18(1)(a) provides for immunity from suit when the potential claim arises solely from defects in the original design or manufacture of the product." *Id. accord Vandelune v. 4B Elevator Components Unlimited*, 148 F.3d 943, 947 (8th Cir. 1998) (holding that section 613.18(1)(a) "grant[s] resellers who did not design or manufacture a product immunity from" strict liability and breach of implied warranty of merchantability claims). "Paragraph 613.18(1)(b) limits strict liability and implied warranty claims when the claims do not arise solely from an alleged defect in the original design or manufacture of the product." *Id.* An example given by the court of a suit under subsection (1)(b) is a suit under strict liability "for failure to warn about the dangers of a product." *Id.*

Finally, the Court flatly refutes the above mentioned argument by stating, "subsection 613.18(1)(b) does not impose a limitation upon the immunity protection of subsection 613.18(1)(a); it provides alternate protection against strict liability and breach of implied warranty for suits against nonmanufacturers where the defect was not in the original design or manufacture." *Id.* Thus, "the immunity protection of 613.18(1) is not dependent upon proof that the manufacturer of the product is subject to the jurisdiction of the courts of this state and has not been declared judicially insolvent as is required in subsections 613.18(1)(b) and (2)." *Id.*

Orteck's role in the tire transaction is not entirely clear. Housley first alleged Orteck manufactured, designed, and sold the tire, but later appeared to narrow its claims to Orteck as a distributor or retailer. Orteck admitted it was a distributor of tires but claims its role in this transaction was only to place the order on behalf of American and process a warranty claim. In its first brief, Orteck sought to avail itself of section 613.18 protections for Housley's breach of implied warranty claim; but in responding to Housley's strict liability assertions in its Reply, Orteck claimed it is not a wholesaler, retailer, distributor, or other seller of the subject tire. On the record and under the circumstances created by the Court's prior determinations, the Court finds Orteck did function in a role that is encompassed by the statute.

The Court next looks to the nature of Housley's claims. Housley pled negligence claims beyond design and manufacturing defects. It is unclear if Housley intended to assert strict liability or implied warranty of merchantability claims on these other bases as well (deficient inspection, warning, and instruction). If such claims arise solely from defects in the orig-

inal design or manufacture of the tire, subsection (1)(a) applies and Orteck is immune.

If Housley seeks to assert strict liability or breach of warranty claims for deficiencies in inspection, warning, and instruction, then Orteck must look for immunity in subsection (1)(b). The manufacturer of the tire was Malhotra Rubbers Ltd., an Indian corporation. Niether party has addressed whether Malhotra is subject to jurisdiction in Iowa or if Malhotra has been declared judicially insolvent.

To the extent Housley retains any ability to prove a breach of warranty claim given the evidentiary infirmity previously addressed by the Court, the claim would be prohibited on the basis of statutory immunity. Accordingly, the motion for summary judgment must be granted on that basis as well

## V. Res Ipsa Loquitur.

 Orteck first argues that the "appropriateness of plaintiff's pleading *[res ipsa loquitur]* is highly questionable," based on the fact that *res ipsa loquitur* is only a rule of evidence and not substantive law, citing *Weyerhaeuser Co. v. Thermogas Co.*, 620 N.W.2d 819, 831 (Iowa 2000). Despite the logic of that argument, however, the *Weyerhaeuser* court specifically states, "The plaintiff may plead, and the district court may submit to the jury, both specific negligence and general negligence under *res ipsa loquitur.*" *Id.; see also Conner v. Menard, Inc.*, 705 N.W.2d 318, 320 (Iowa 2005) ("In Iowa[,] plaintiffs are permitted to plead, and trial courts are permitted to consider, both specific negligence and *res ipsa* in some cases."). These theories are submitted in the alternative. *Weyerhaeuser Co.*, 620 N.W.2d at 831. Thus, "proof of the cause of an injury or loss will not necessarily avoid application of the res ipsa doctrine." *Reilly v. Straub*, 282 N.W.2d 688, 694 (Iowa 1979). There is, however, the need to distinguish between those cases where "evidence of the cause of an injury or loss is so strong and extensive as to leave nothing for inference and those which establish the cause but still raise only an inference as to defendant's negligence." *Id.* As the court stated in *Reilly,* the plaintiff should not be "penalized by the loss of the presumption because he has been willing to go forward and do the best he can to prove specific acts of negligence." *Id.* at 695. Only direct evidence of the essential elements of the claim precludes pleading *res ipsa. Conner,* 705 N.W.2d at 322. Here, Plaintiff Housley has some evidence as to the cause of his injury, but it is not "so strong and extensive as to leave nothing for inference." *Id.* (quoting *Reilly,* 282 N.W.2d at 694). Thus, Defendant is incorrect under Iowa law in suggesting that Housley cannot plead *res ipsa loquitur.*

 *Res ipsa loquitur* means "the thing speaks for itself" and is a type of circumstantial evidence. *Conner,* 705 N.W.2d at 319. The doctrine applies when "(1) the injury is caused by an instrumentality under the exclusive control of the defendant, and (2) the occurrence is such as in the ordinary course of things would not happen if reasonable care had been used." *Weyerhaeuser Co.,* 620 N.W.2d at 831 (quoting *Brewster v. U.S.,* 542 N.W.2d 524, 529 (Iowa 1996)). The plaintiff must provide substantial evidence to support both these elements, which then permits, but does not compel, the jury to draw an inference of negligence by the defendant. *Id.*

 For the first element, control must just "be established at the time of the negligent act, which is not necessarily the time of injury." *Conner,* 705 N.W.2d at 319. In addition, the plaintiff must show that, more likely than not, "(1) there

was no change in the condition of the instrumentality, and (2) no intervening act that could have caused the event resulting in the injury." *Weyerhaeuser Co.,* 620 N.W.2d at 832. The plaintiff can prove this, and must by the preponderance of the evidence, by showing that "he has done nothing abnormal with the instrumentality causing the injury and has used it in the manner and for the purpose for which it was intended." *Palleson v. Jewell Co–op. Elevator,* 219 N.W.2d 8, 14 (Iowa 1974).

The true question is whether "reasonable persons [could] conclude that, more likely than not, the event was due to the defendant's negligence." *Id.* at 833. Even an intervening act may not break the chain of the defendant's liability if that act was foreseeable. *Id.* (finding that the fire caused by plaintiff was a foreseeable intervening cause and as such did not break the chain for the defendant's negligence under *res ipsa loquitur* because the LP tank was required under regulations to withstand fire). "Failure to connect the defendant with the negligent event defeats the application of res ipsa loquitur." *Brewster,* 542 N.W.2d at 528–29.

To succeed in defeating a motion for summary judgment, the plaintiff must produce "substantial evidence as to both prongs of res ipsa loquitur." *Id.* at 529 (discussing a motion for directed verdict). The defendant must produce evidence strong enough that the court can say "as a matter of law [ ] res ipsa loquitur does not apply." *Id.* at 530. Finally, "[i]f expert testimony is required to establish general negligence or the foundational facts and expert testimony is unavailable, then summary judgment is appropriate." *Id.* at 530–31.

Housley has not produced substantial evidence that the tire was "under the exclusive control of the defendant" at the time of the alleged negligent act. In fact, Housley has produced no evidence that Orteck at any time had control of the tire but merely alleges that to the best of his knowledge the tire came from Orteck. In contrast, Orteck has produced unchallenged evidence that it never had control over the subject tire at any time, let alone at the time of the alleged negligent act. Orteck has produced an affidavit from its Executive Vice President of Purchasing stating that Orteck does not manufacture tires, that the subject tire was purchased from Malhotra Rubbers Ltd., an Indian company, and that it was shipped directly from Malhotra to American Tire Distributors, who then sold it to Housley. Without Orteck ever having possessed the subject tire, it could never have control over the tire and thus, because the first prong cannot be met, as a matter of law, *res ipsa loquitur* cannot apply.

*Res ipsa loquitur* cannot apply in this case because Housley has failed to generate a genuine issue of material fact that Orteck had exclusive control over the tire at the time of the alleged negligence. Accordingly, the motion for summary judgment must be granted on this additional basis.

## CONCLUSION

The Court finds Housley's expert witness, Mr. Krapfl, must be excluded for failure to conform to the requirements of Fed.R.Evid. 702 and the standards set forth in *Daubert* and subsequent cases. Accordingly, Defendant's Motion to Exclude Expert Testimony (Clerk's No. 17) must be **granted.** The failure to retain an appropriate expert witness or advance any evidence of a defect other than unsupported conclusions means Housley has not demonstrated a genuine issue of material fact on his product liability claims, in negligence, warranty, or strict liability. Orteck

is entitled to the protections of Iowa Code § 613.18. Finally, Housley has failed to generate a genuine issue of material fact regarding whether Orteck had exclusive control over the tire at the time of the alleged negligence, or at any time. Orteck's summary judgment motion (Clerk's No. 16) must therefore be **granted.** The above-entitled action is **dismissed.**

**IT IS SO ORDERED.**